## THE EXECUTORS OF WILLIAM SWARTZ v. PETER LEIST.

1. A mortgage of real estate is regarded, in equity, as a mere security for the performance of its condition of defeasance, and where that condition is the payment of a debt, the security is regarded as an incident of the debt, which, by the legal transfer of the debt, passes with it to the assignee.
2. So, if several promissory notes are jointly secured by mortgage, the assignee of one of the notes so secured, becomes equitably entitled to a *pro rata* participation in the benefit of the security, unless the agreement of the parties to the assignment be otherwise.
3. But, where the mortgagee, retaining the legal interest in the mortgage, subsequently enters satisfaction and a discharge upon the record of the mortgage, such discharge operates to cancel the record of the mortgage, as against subsequent purchasers and mortgagees in good faith, and without notice ; and as against them, the assignee of the note can not assert his equitable lien.

ERROR to the district court of Marion county.

The original action came into the district court of Marion county, by appeal from. the judgment of the court of common pleas. The suit was brought by the plaintiffs in error, against one. William Hurd and the defendant in error; and the petition, filed December 8, 1857, alleges that Hurd, on the 10th of April, 1855, executed and delivered to one Peter Little (then in life, but since deceased) his promissory note for $200, payable to said Little, or bearer, on November 1, 1857; and to secure the payment of the same, and other notes, executed and delivered at the same time, a mortgage to Little, upon certain .described real estate in Middletown; which mortgage was duly recorded, April 26, 1855. That sometime in the summer of 1855, the said Little, for a valuable consideration, sold and delivered said $200 note to the plaintiff's testator, William Swartz. That afterward, on the 10th November, 1855, Little, the said mortgagee, wrongfully, and without the knowledge of Swartz, and before the maturity of the note which he held, entered, on the margin of the record of the mortgage, a release, in the following terms:

" Received of Wm. Hurd, full satisfaction of the consideration of the within mortgage. Therefore this mortgage is forever null and void, and of no effect.

" Nov. 10, 1855."　　　　　　　　　" PETER LITTLE."

" This release was recorded on the 10th day of November, 1855.　　　　　" J. H. BARKER, Recorder, Marion Co."

That on the 17th November, 1855, Hurd, the mortgagor, sold and conveyed, by deed duly recorded, said mortgaged pemises to the defendant, Peter Leist.

Judgment was therefore asked against Hurd, for the amount due upon the note, and, in default of payment, an order for the sale of the mortgaged premises was prayed for.

The case was heard, in the common pleas, on the demurrer of Peter Leist to· the petition, as not containing facts sufficient to constitute a cause of action.

In the district court the demurrer of Leist was overruled;

and he thereupon answered, averring that he purchased the premises in good faith, and paid full value therefor, after the release of the mortgage, under which plaintiffs claim, had been entered of record, and without the knowledge that any of the notes which had been secured thereby were outstanding, and without any knowledge or notice of the equitable lien of Swartz set up in the petition.

To this answer the plaintiffs demurred, and the court overruled the demurrer, and entered judgment in favor of defendant, Leist, adjudging said premises to be held by him discharged from the lien of the mortgage.

This judgment is now sought to be reversed, on the ground that the court erred in overruling the plaintiffs' demurrer to the answer of Leist, the purchaser.

*J. & S. H. Bartram,* for plaintiffs in error:

1. The transfer of the note carried with it, as an incident, an equity in the mortgage security.

When only a part of the notes secured by a mortgage are transferred, the uniform practice is to retain the mortgage.

The mortgage security is a chattel interest which passes by the sale of the note. We have no statute in Ohio for the registration of the assignment of notes. The rule *caveat emptor* applies in full force to the purchaser.

The court is referred to the following authorities: 1 Hill. Mortg. pp. 161–164, secs. 1, 2, 3, 4, 5; p. 353, sec. 35; 1 Powell on Mort. p. 273, sec. 2; 3 Ib. p. 907, notes; 4 Kent Com. (6th Ed.) p. 194; *Southern* v. *Mendum,* 5 N. H. 420; *Wilson* v. *Kimball,* 7 N. H. 300; *Roguey* v. *Lovejoy,* 13 N. H. 247; *Page* v. *Pierce,* 6 N. H. 317; *St. Bank* v. *Tweedy,* 8 Blackf. 124; *Jackson* v. *Blodgett,* 5 Cowen 202; *Lewis* v. *Stark,* 10 S. & M. 120; *Henderson* v. *Herrod,* 10 S. & M. 631; *Keyes* v. *Wood,* 21 Verm. 331; *Belding* v. *Manly,* Ib. 550; 9 S. & M. 448; 8 B. Mon. 287; 4 Sandf. Ch. 51; 1 Conn. 433; 6 Mass. 239.

2. Little could not defeat the equity by a release after he had sold and transferred the note.

Leist had notice of the mortgage. He knew that the notes

were not due. He had no right to presume payment, as he might after the maturity. Payment alone would release the mortgage. 8 Ohio Rep. 224; 11 Ohio Rep. 334; 1 J. J. Marsh. 257; 2 Mass. 493; 2 Marsh. 109.

Little could not have maintained an action upon the note. His receipt of payment would not have discharged it. How then can his receipt upon the record affect it.

The statute, 1 S. & C. St. 471, sec. 1, provides that when the mortgagee shall have received payment of the money *due him* and *secured* by the mortgage, he may release it, etc. It must be *due him.* This money was not due to Little. The statute plainly contemplates the receipt to be given by the person to whom the money is due. Simply a receipt for the money by a party who is entitled to receive it, but not by any other party. Swartz became the mortgagee *pro tanto,* and he, only, could give a valid receipt.

*O. Bowen,* for defendants in error :

Upon the facts of the case, two questions arise :

1st. Does the transfer of a negotiable note, before due, and secured by a mortgage, carry with it the right to enforce payment against the mortgage security ?

2d. Is a release, or a quit-claim deed, necessary, in such case, to vest in the assignee, or holder of a note secured by a mortgage, the right to enforce it as against the acts of the mortgagee and assignor of the note ?

Upon the first proposition, it is admitted that the holder of such a note, either by delivery or by assignment, may, as against the mortgagor, and where the estate remains unchanged by intervening conveyances, or satisfactions, enforce the mortgage in the payment of his debt.

This, the defendant claims to be the full extent of the rule. The authorities cited by the plaintiff in error, go no farther, as we understand them.

2d. When the purchaser of a note, thus secured, deems it important so acquire, at the same time, an indefeasible right to the *security,* he should take a quit-claim from the mortgagee. He should get into his own hands that title which he

can *only* get by a deed. That is the only way he can make himself secure as against the acts of the mortgagee and the mortgagor.

. How, then, does this case stand? Before the maturity of the note upon which plaintiff sues, Little, the payee of said note, entered upon the mortgage record a *satisfaction* of the note and mortgage. This act, though wrongful on the part of Little, was conclusive record evidence of what it purported to be. Leist purchased the land for a full consideration, without any knowledge of fraud or wrongdoing, upon the part of Little, in the entering of that satisfaction. Shall he hold the lands thus purchased? or shall his claim be defeated by the claim of Swartz, who, it is shown, failed to secure himself, as he ought to have done, by taking to himself a conveyance of the mortgage estate?

The court is referred to vol. I, Western Law Monthly, p. 510, for a report of the case in the court below, and for the authorities cited by the judge who tried the case.

Scott, J.—A mortgage of real estate is regarded, in equity, as a mere security for the performance of its condition of defeasance. If that condition be the payment of a debt, the security is regarded as an incident belonging to the debt, and the equitable right to the benefit of the security, passes, by the legal transfer of the debt, to the assignee, unless the agreement of the parties to the transfer be otherwise. And so, if the debt be evidenced by several promissory notes, the legal transfer of a portion of the notes carries with it such proportionate interest in the security as the notes transferred would be entitled to in the hands of the assignor. If the notes all stand upon the same footing, the assignee of a part of them is entitled to a *pro rata* participation in the benefit of the security.

In the case before us, Swartz, by becoming the legal owner of one of the notes protected by the mortgage, acquired an interest in the security which it afforded, in the absence of any special agreement to the contrary. And this interest, he might assert, as against both mortgagor and mortgagee, so

long as the security subsisted. Under these circumstances, it can not be doubted that the release of the mortgage by Little was wrongful. It was a fraud upon the rights of Swartz And those rights would remain unaffected as against all parties participating in, or cognizant of, the fraud.

But the question in this case is, whether the rights of Swartz were such that they can be asserted against a *bona fide* purchaser from the mortgagor, who, without notice of the lien claimed by Swartz, has parted with his money, relying upon a statutory discharge of the mortgage, which he found executed by the mortgagee, and properly entered upon the record. The rights of Swartz were, as we have said, purely equitable. No title to, or estate in, the mortgaged premises had been conveyed to him. A legal title to lands can not, either at common law, or under our statutes, pass, by the sale and delivery of a promissory note. The legal title to the conditional estate, granted by the mortgage, remained in the mortgagee as fully after the transfer of the note as before. True, he may have held it as a trustee, in part, for the benefit of Swartz. But a trust of this kind, not apparent on the face of the mortgage deed, evidenced by no record, and unknown to the world, can not affect the rights of *bona fide* purchasers, who, in ignorance of its existence, confide in the acts of the mortgagee falling within the apparent scope of his powers as the legal owner of the mortgage. As against such parties, the discharge must operate to cancel the record of the mortgage, and thereby extinguish its lien.

The equities of a *bona fide* purchaser, in such a case, are certainly as strong as those which arise from a latent trust; and when they are accompanied by the legal title, must, for that reason, prevail.

But the parties here are not equally faultless, and do not stand *in equali jure.* Swartz negligently or confidingly permitted Little, the mortgagee, to retain the legal title conveyed by the mortgage, and the power of control over it. Little had thus the legal power, and, ostensibly, a perfect right to discharge and release it. Leist, the purchaser, having no reason to suspect fraud, was justified in regarding the

release legally made, by one who was ostensibly the proper party, as an effectual discharge of the lien. And, as between these parties, he who unwisely reposed confidence in Little, and gave him the power to defraud, should suffer the consequences.

The statute of March 12, 1836, provides " That when the mortgagee of any property within this state shall have received payment of the money due to him and secured by the mortgage, and shall have entered, or may hereafter enter satisfaction, or a receipt for the same, either on the mortgage, or on the record of the mortgage, such satisfaction or receipt, so recorded, shall operate and be taken to release the said mortgage to whoever may be entitled to a release." 1 S. & C. St. 471.

It is claimed that the release entered on the record, in this case, was inoperative, under this statute, because the note held by Swartz had not matured at the time, and was therefore not " due," within the meaning of the statute ; and for the farther reason, that " *payment of the money* " was not in fact, " *received.*"

This statute was intended to facilitate the discharge of mortgage liens. · It is remedial in its character, and should be liberally construed. The word " due," as a synonym for *owing* or *owed*, may well be regarded as applicable, in this statute, to all debts contracted and subsisting, whether evidenced by notes which have reached maturity, or otherwise. Such use of the word is by no means unfrequent in the statute book, and in popular language.

And as to the want of actual payment—so far as respects the lien of the mortgage, the mortgagee is clearly estopped by his recorded release, from denying, as against subsequent purchasers in good faith, the payment thus evidenced by his own act. And this estoppel must be equally effective against the holder of a latent equity, arising from contract with the mortgagee.

A recent case in New York (*Ely* v. *Scofield*, 35 Barb. S. C. Rep. 330) is closely in point. In that case, a bond and mortgage were assigned by the administrator of the mort-

gagee. The administrator, afterward, by mistake, discharged the mortgage without receiving payment of the debt, and the discharge was duly recorded. The premises covered by the mortgage were subsequently sold and conveyed to a *bona fide* purchaser, without notice. Upon suit brought by the assignee to foreclose the mortgage, it was held, that the administrator, being ostensibly the proper person to acknowledge satisfaction of the mortgage, the effect of its discharge by him, when properly recorded, was to cancel the record of the mortgage, as against subsequent purchasers and mortgagees, in good faith, without notice.

The plaintiffs' demurrer was properly overruled by the district court, and the judgment of that court is affirmed.

SUTLIFF, C.J., and PECK, GHOLSON and BRINKERHOFF, JJ., concurred.