†MARY D. LEA v. HORACE WELSH ET AL.

CANCELLATION BY ORIGINAL MORTGAGEE AFTER UNRECORDED ASSIGNMENT RELINQUISHES LIEN.

> If a mortgage is assigned and the assignment is not recorded, and the original mortgagee, representing himself as still holding the mortgage, cancels the same of record, a subsequent *bona fide* purchaser of the land, without notice, takes the same free of the lien of such mortgage.

ON APPEAL from the Common Pleas Court.

HAYNES, J.

This case comes into this court by appeal from the judgment of the common pleas court. The petition was filed by Mary D. Lea in the January term, 1893, in the court of common pleas, in which she sets up that she is the owner of a note and mortgage and that there is due to her from Horace Welsh the sum of $1,000 and interest on a note as follows:

· "Port Clinton, Ohio, June 6, 1886. Three years after date I promise to pay to the order of Geo. E. St. John, $1,000 at Sandusky, Ohio. Value received, with interest payable annually."

On the back of the note was the following endorsement: "Interest paid June 26, 1888." "Interest paid June 26, 1889." "Interest paid June 26, 1890." "Interest paid June 26., 1892." 'Payment guaranteed, Geo. E. St. John."

She also sets up that at the time the note was made a mortgage was executed by Horace Welsh on certain property in Ottawa county to secure the payment of that note. That the mortgage was recorded on June 26, 1886, and that after said mortgage was so executed and was recorded, St. John sold, transferred and assigned said note and mortgage to her for a good and valuable consideration.

The assignment of the mortgage reads: "I hereby assign the within mortgage to Mary D. Lea. Geo. E. St. John." She further alleges that the note has not been paid and the mortgage has become absolute.

The defendant, John Roper, filed an answer in which he sets up that on March 30, 1889, he bought the property of Welsh, paying a full consideration therefor, upon a release of the mortgage by St. John, who appeared by record to be the legal owner thereof, and without any knowledge of the right of the plaintiff. The note being dated on June 26, 1886, and payable three years after date, would fall due June 26, 1889.

Dora, his wife, files an answer claiming she has an interest in the premises, also setting up substantially the same facts as her husband sets up in his answer.

Issue was taken by a reply denying substantially the facts and allegations of the answers.

The issue tried here arises upon the pleadings above set forth and was heard upon testimony. The testimony shows, in substance, that in 1883 a mortgage

---

†This judgment was affirmed by the Supreme Court, 54 O. S., 678, on the authority of Schwartz v Leist, 13 O. S., 419.

**had been** made by Welsh, who was the owner of the property, to Geo. E. St. John, for $1,000, payable in three years, which had been sold to a Mrs. Curran and by her sold to the plaintiff. That about the time that note matured, St. John went to Mrs. Lea, at Sandusky, and said that Mr. Welsh desired to get an extension of time and proposed to give a new mortgage and note. He had already drawn a note and mortgage and had the same executed by Welsh, drawn payable to himself, dated June 26, 1886, and had the mortgage recorded, and had the mortgage and note with him; and thereupon she concluded to take the new note and mortgage, and thereupon it was transferred to her at that time by St. John, who indorsed upon the mortgage :

"Port Clinton, Ohio, June 26, 1886. For value received, I hereby **assign** the within mortgage, to Mary D. Lea."

And upon the note he wrote "Geo. E. St. John," and guaranteed the payment in writing upon the note. Some controversy is made there, perhaps not very important and not much dwelt upon, as to whether St. John became the agent of Mrs. Lea, in any manner. St. John states that he had agreed to collect the interest on the note and that he had collected from Welsh, for two or three years, and transmitted the same to Mrs. Lea. Mrs. Lea denies that she authorized him, in any manner or form, or agreed to have him collect interest for her; that St. John told her he was acting for Mr. Welsh in the matter and that he would see him paid. It seems the endorsements were made on the notes sometimes by St. John and sometimes by Mrs. Lea. No entry was ever made on the records in the office of the recorder at Port Clinton of the assignment of the mortgage to Mrs. Lea.

Welsh testified that he supposed St. John held the note and made his payments of interest to him. Now that matter run along to March 3, 1889. The note and mortgage of Welsh was then not due; it would not become due until June, 1889; at that time Welsh sold this property to the defendant, Roper, for the sum of $2,200 cash, and received the money in payment for it. The circumstances attending the transaction are substantially these: Mr. Roper was desirous of buying a piece of property; he had accumulated some little money, having worked for Lockwood, who lives in this or Erie county, and hearing of this place he went to look at it and thereupon entered into an agreement with Welsh to buy it of him for $2,200. Welsh told him that there were two mortgages on the property held by George E. St. John, of Port Clinton. They came to town and called upon St. John, who said he was willing to receive the money on the mortgages. St. John drew a deed and delivered it to Mr. Welsh. Roper then went to the office of the recorder and had a search made of the records to see if the title was good, the following week. They came to Port Clinton again and the parties (Mr. and Mrs. Roper, Mr. Welsh and Geo. E. St. John), all went to the recorder's office together and the recorder then told Mr. Roper that the title was good, producing the abstract; that there were two mortgages to Mr. St. John (being the mortgages before spoken of), and thereupon the transaction was concluded by the payment of the $2,200 in money by Roper to Welsh, and the cancelling of the mortgages by St. John upon the record in the presence of the recorder, and a delivery of a portion of the money by Welsh, $1,500 to St. John at that time, in payment of these mortgages; the balance belonged to Welsh. In all this transaction nothing was said about Mrs. Lea, or any intimation that she owned the mortgages; in fact, St. John said that he was the owner of the mortgages. He said one mortgage was there, the one owned by Mrs. Hitchcock, and that the other mortgage was at Sandusky, in his box there, but he would get it in a few days and deliver it. This he failed to do, and when his attention was called to it a few days after, he told Roper that it was none of his business, that it was Welsh's. Subsequently Roper spoke to him again asking for the mortgage, but he said it was burned. Welsh also testifies that he spoke to him a few days afterward and he said that the mortgage was burned and that

he could not deliver it. No record was made by St. John of this mortgage, and the witnesses testify (Welsh, Roper and Mrs. Roper) that they had no knowledge whatever that Mrs. Lea had or owned the mortgage, and that the statement was made to them that St. John owned the mortgage; and there is no evidence whatever to show that the Ropers had any knowledge whatever, or notice that Mrs. Lea had or held the note and mortgage or had any interest in the same.

The case has been very thoroughly argued on both sides. We have endeavored, so far as we could, to give it a full consideration. The questions involved are important, as well as the amount, to the respective parties. The question here is whether as against the defendants, Mr. and Mrs. Roper, Mrs. Lea is entitled to enforce the lien of this mortgage. That she is the owner of the mortgage in good faith, having paid a good consideration for it, there is no dispute; that she never received a dollar of money upon the principal is also true. The defendant, Roper, depends very largely upon the case of the executors of *Wm. Swartz* v. *Leist*, 13 Ohio St., 419. He claims that upon the entering of satisfaction of this mortgage upon the record of the mortgage by St. John, who was the mortgagee, the payment of the purchase money afterward by Roper and the execution of the deed to him without any notice of the right of Mrs. Lea, places him in the category of a *bona fide* purchaser of the land, free from the lien of the mortgage, which he claims was in the hands of Mrs. Lea simply an equitable lien.

Now, first in regard to the title of Mrs. Lea. The note was indorsed to her and the mortgage was assigned to her, but that assignment was not in any manner or form acknowledged or witnessed, as required by the statutes of the state of Ohio for the conveyance of an interest in real estate. It is claimed by counsel for Mrs. Lea that she has the legal right to the note and the legal title to the mortgage. We understand that, by the statutes of Ohio, when a party wishes to make (in the state of Ohio) a conveyance of real estate, or any interest in real estate, under the statute of frauds that conveyance must be in writing; that under the general statutes in relation to conveyance that that instrument must be signed and acknowledged in the presence of two witnesses and duly acknowledged, etc., and that is necessary to the legal conveyance of lands. If a deed should be made out lacking this necessary signing and conveying it might be held as a contract to convey and be enforced in a court of equity.

We understand, under the course of decisions in Ohio, and that statutes also, that when a note is made payable to order and duly indorsed, in writing, by the payee to a third party, that that transfers the legal title in that note to the endorsee. We understand as the law stood at the time of the assignment of this mortgage to Mrs. Lea, when a mortgage is assigned in writing to a party, but simply assigned by the mortgagee but not witnessed or acknowledged, that that amounts to an assignment of a mortgagee's interest in *equity*, but does not convey the legal title of the mortgagee in the real estate. We understand that when the note is assigned in the manner I have stated, and it is secured by a mortgage, that that in equity conveys to the party who receives the note an interest in the mortgage equal to the amount of the note; that he can enforce in equity, upon foreclosure of the mortgage both as against the mortgagee and mortgagor; that the assignment in writing of the mortgage not witnessed or acknowledged only conveys to him the same right, that is to say, that he has the same right to foreclose the mortgage and enforce his liens and amount of the note, both as against the mortgagee and as against the mortgagor; we understand, further, under the laws of the state of Ohio, that if the party desires to obtain an interest in the real estate and to hold strictly the real title of the mortgagee in the real estate, that the assignment, as the law stood in 1886, must be acknowledged and witnessed in the manner provided in the statutes for deeds.

Now let us look at the case of *Swartz* v. *Leist*, *supra*. In that case there had been executed to one Peter Little a mortgage to secure certain notes, among others a note of $200, payable to Little, and after that note became due Little

transferred that note to Swartz, sold it to him and retained possession of the mortgage; that he conveyed the other notes to other parties, and that afterwards, and within a short time afterwards, he, wrongfully and without the knowledge of Swartz, and before the maturing of the same note which he held, entered, on the margin of the record of the mortgage, a release, in the following terms:

"Received of William Hurd full satisfaction of the consideration of the within mortgage. Therefore the mortgage is forever null and void and of no effect. Nov. 10, 1855.

PETER LITTLE."

This deed was recorded November 10, 1855, "J. H. Barker, Recorder, Marion county." And then on the 17th, that being seven days after, the mortgagor sold and conveyed "by deed duly recorded" to Peter Leist said mortgaged premises.

Afterwards Swartz brought a suit for the purpose of enforcing his mortgage against the premises, that is the executors, Swartz having in the meantime died. An answer was filed by Leist, setting up the facts, and to that a demurrer was filed in the district court, which was overruled and judgment rendered in favor of the defendant Leist, as a *bona fide* purchaser of the property, and to reverse that judgment error was prosecuted in the Supreme Court. In the opinion delivered by Judge Scott it was held that the judgment of the district court should be affirmed and that Leist held the property, discharged of the liens of Swartz's note and mortgage, which Little had originally taken.

In that decision, the court say:

"That the question in this case is whether the rights of Swartz were such that they can be asserted against a *bona fide* purchaser from the mortgagor, who, without notice of the lien claimed by Swartz, has parted with his money, relying upon a statutory discharge of the mortgage, which he found executed by the mortgagee and properly entered upon the record. The rights of Swartz were, as we have said, *purely equitable*. No *title to* or *estate in* the mortgaged premises had been conveyed to him. A legal title to the lands cannot, either at common law or under our statutes, pass by the sale and delivery of a promissory note. The legal title to the conditional estate, granted by the mortgage, remained in the mortgagee as fully after the transfer of the note as before. True, he may have held it as a trustee, in part, for the benefit of Swartz. But a trust of this kind, not apparent on the face of the mortgage deed, evidenced by no record and unknown to the world cannot affect the rights of *bona fide* purchasers who, in ignorance of its existence, confide in the acts of the mortgagee falling within the apparent scope of his powers as the legal owner of the mortgage. As against such parties, the discharge must operate to cancel the record of the mortgage, and thereby extinguish its lien.

The equities of a *bona fide* purchaser in such a case are certainly as strong as those which arise from a latent trust; and when they are accompanied by the legal title must, for that reason, prevail."

And they then proceed to discuss the statute of March 12, 1836, which provides for the release of mortgages. It reads:

"That when the mortgagee of any property within this state shall have received payment of the money due to him and secured by the mortgage, and shall have entered, or may hereafter enter satisfaction, or a receipt for the same, either on the mortgage, or on the record of the mortgage, such satisfaction or receipt, so recorded, shall operate and be taken to release the said mortgage to whoever may be entitled to a release."

That statute was amended in 1888—85 O. L., 284, but the effect of that statute, we are not called upon to consider in this case. See also 88 O. L., 357.

It is contended here by counsel for the plaintiff that the determination in that case is in conflict with the principles laid down by the Supreme Court in the case of *Holliger* v. *Bates*, 43 O. S., 437.

In that case, Holliger brought an action against Bates to quiet his title to certain lands, and Bates set up for an answer that in March, 1878, a man by the name of Rolli "had executed and delivered to one John Zwald, two promissory notes for the sum of $117.50 each, one due on October 1, 1880, with interest."

And to secure the payment of the same, he executed a mortgage deed on the premises to Zwald, whic1 was entered for record the same day.

That about April 1, 1878, Zwald, for a valuable consideration, indorsed the notes and delivered the same, together with the mortgage to him, Bates, and that he is still the owner of the notes and mortgages, whereby he is entitled to a lien on the premises. "He also avers that the notes are still outstanding, and wholly unpaid and the mortgage is in full force and unsatisfied."

In reply to that, Holliger set up the fact that there were two mortgages; that the prior one was held by him, Holliger, and that in a suit in the court of common pleas, Tuscarawas county, "wherein he was plaintiff and John Zwald, Catherine Zwald, William Rolli and Oliver Knisely were defendants," to foreclose that prior mortgage to which said suit Zwald and his wife had been made parties. A decree had been entered for the sale of the premises and at the sale of the same had been purchased in by him. He files his bill to quiet his title on the grounds that that mortgage was no longer a lien on the premises. The opinion is delivered by Judge Johnson. It must be admitted on some points as to the law, his statements seem to differ somewhat from the opinion delivered by Judge Scott, in the case of *Swartz* v. *Leist, supra.*

Now, in the Holliger case, it will be seen that the important question was the validity of certain proceedings to foreclose a mortgage and the question whether the judgment in the case was a bar to the claim of Bates. It was contended, of course, by the plaintiff Holliger, that it was a bar, for the reason that he had made the party, who was the mortgagee upon the record and ostensibly the owner of the mortgage, a party to the suit, and that Bates' title was by indorsement of the notes by Zwald, and also by delivery of the notes, but without any indorsement of the mortgage. I will read what Judge Johnson says:

"It will be seen by the statement of facts, that Zwald's mortgage and notes became effective March 1, 1878; that one note was due October 1, 1878, and one October 1, 1880, and that long before due they became the property of Bates by purchase from the mortgagee, Zwald, by indorsement and delivery of the notes, and by delivery of the mortgage, without such indorsement, so that Bates thereby became the legal owner and holder of the notes by purchase for a valuable consideration, before due, and the sole and absolute owner of the mortgage to secure the same by delivery without written assignment of the same."

Now he says that Bates became the legal owner of the notes and became the owner of the mortgage. (Again reading.)

"The reply of Holliger admits these facts and seeks to avoid their legal effect by setting up that he had a prior mortgage on the same premises, on which he commenced an action October 1, 1878, one year before the first note held by Bates became due, and two years before second, which mortgage was executed by Rolli, and was entered for record the day of its date," etc.

The answer of Bates shows that Bates purchased from Zwald and thereby secured and acquired an interest in the premises as mortgagee, and, by the well settled principle in Ohio, was entitled to institute proceedings to foreclose his own mortgage when the notes became due, and, by making the prior mortgagee a party, to foreclose that also; and a sale made under such a decree, if the mortgagee was also a party, would confer the complete title upon the purchaser. Now, as we have observed, that was a suit brought to foreclose a mortgage and the question is whether all the necessary parties had been brought into that suit. There is no rule better established than this that in judicial proceedings all persons who have an interest in the matter or in the subject-matter, must be made parties to the suit or their rights are not cut off. That Bates held an equitable interest in the mortgage there can be no question under Ohio decisions.

The court, in speaking of that equity, say: "It is a misnomer to call Bates 'equity secret.' It was of record as the law required, and was notice to all the world of the outstanding notes yet due and presumptively unpaid."

The claim made by counsel in argument is, that the equity of Mrs. Lea, being an open equity, the defendant, Roper, was bound to take notice of it at

the time he took the deed. But we understand the *Swartz* v. *Leist, supra,* case to proceed on a different theory. The basis of that decision is that while Swartz had an equity, he had omitted to put the evidence of it upon the record or give notice to the mortgagor.

That Leist had purchased upon faith of a discharge by the mortgagee who apparently, and in fact, had a legal title to the mortgage, that he took a deed of the land and that his equities were equal to the equities of Swartz and that begin clothed with the legal title, his claim prevailed.

The equity of Swartz in that case was as open as the equity of Mrs. Lea in this case, yet that equity did not prevail. It will be observed that the court, in deciding the Holliger case, makes no reference to the Swartz case. It is not to be supposed the court intended to overrule the Swartz case without so much as referring to it, and while the language of one case may seem diverse from the other in some respects, yet it should be remembered that in the one case they discuss questions of law arising upon a different state of facts and that in the Swartz case they are giving effect to an old principle, the equity arising between two persons, one of whom has an equity and the other an equal equity clothed with a legal title.

Now, how stands the case as compared with *Swartz* v. *Leist, supra*?

Roper desiring to buy this land went to the party who had the legal title to it at that time, bought the land, paid his money and took a warranty deed for it, and went into possession. He was told when he went to the recorder's office, that there were two mortgages on the land belonging to Mr. St. John, of Port Clinton, and as he wanted his land free from incumbrances it was agreed before concluding the sale that he was given the legal title with the mortgages cancelled by the man who had the apparent right to release the title, he holding the legal title to the mortgage. Now upon this being done the sale is concluded. Unquestionably, if St. John had gone the day before to the court house and entered upon the records the cancellation of that mortgage, and Roper then came and purchased and paid for that land, he would be within the exact terms of the case of *Swartz* v. *Leist, supra,* there is no question about that, and we are unable to see any difference in law in regard to his rights under the facts as set forth in the record of this case and those of *Swartz* v. *Leist, supra.*

We have considered all the points made by counsel for plaintiff. We are of the opinion that upon the facts and the law of the case judgment should be given for defendant, Roper.