Spear, J.
The question presented by the record, is whether, both parties, acting in good faith, one who obtains title to a mortgage given to secure several notes to several persons, by assignment for value bjr one of the mortgagees with delivery of the same and a forged copy of one of several notes secured thereb}7, indorsed by the paj^ee who was then the owner of the genuine note, obtains a lien for money thus advanced on the faith of the security, in preference to the bona, fide indorsee for value of the genuine note obtained afterwards, both transactions occurring before the maturity of the note ?
*133 It seems to us that the question will be solved by die application of simple and well established principles. The concession that each party acted hi e2itire good faith remor es' any necessity for considering equities, a2id leaves the case to be determhied on purely legal grounds.
The following propositions we consider are settled in Ohio:
1. Where a promissory 2iote is secured by mortgage, the note, not themortgage, represents the debt. The 2iiortgage is, therefore, a mere incident, and an assignme2it of such incident will not, in law, carry with it a transfer of the debt; on the other hand a transfer of the note by the owner so as to vest legal title in the indorsee will carry with it equitable ownership of tlie mortgage. And so, if the debt be evidenced by several promissory 2iotes, the legal transfer of a portion of the notes carries with it such proportional hiterest in the security as the notes transferred bear to the whole. Harkrader v. Leiby, 4 Ohio St., 602; Ex'rs of Swartz v. Zeist, 13 Ohio St., 419; Fithian v. Corwin, 17 Ohio St., 118; Allen v. Bank, 23 Ohio St., 97; Holmes v. Gardner, 50 Ohio St., 167.
2. Being but an incident of the debt, the mortgage remains, until foreclosure or possession taken, in the nature of a chose in action. Where given to secure notes it has no determinate value apart from the notes, and, as distinct from them, is 2iot a fit subject of assignment. A2id where the notes are legally tra2isferred, the mortg-agee, and all claiming under him, will hold the mortgaged property in trust for the holder of the notes. Jordon v. Cheney, 74 Me., 359; Jones on Mortgages, 818; Pomeroy’s Eq. Jur., section 1210.
3. All 2iotes payable to any person or order are *134 negotiable by indorsement thereon, so as absolutely to transfer and vest the property thereof in each and every indorsee or holder successively. Such indorsee,or holder, may, in his own name, institute and maintain an action thereon against the maker. Sections 3171 and 3172, Revised Statutes.
4. A holder of negotiable paper who takes it before maturity for a valuable consideration, in the usual course of trade, without knowledge of facts which impeach its validity, holds it by a good title. To defeat a recovery it is not sufficient to show that he took it under circumstances which ought to excite suspicion in the mind of a prudent man. To have that effect, it must be shown that he took the paper under circumstances showing- bad faith or want of honesty on his'part. Nor does the note lose its commercial character when secured by mortgage. Johnson v. Way, 27 Ohio St., 374; Kitchen v. Loudenback, 48 Ohio St., 177.
Applying these rules to the facts, the following conclusions seem to result, viz. :
Kernohan, by the assignment of the mortgage, took the legal title to it so far as the same was owned by McGill, and an equitable right in the $7,602.72 note. He did not take, nor did McGill intend to transfer to him, any legal title to the note, for McGill kept, and intended to keep that in his own possession, unindorsed, and subject to his continued control. Such rights as Kernohan took he .might assert as against McGill, but John and Louis Manss alone can recover on the note. They, by their purchase and the indorsement to them by McGill, took a full title to it as against the world, together with the equitable title to the mortgage in whosesoever hands it might be. The one has the legal title to the incident, with an equitable right *135 in the debt; the other the legal title to the debt, tog-ether with an equitable title to. the incident. As both cannot have precedence the weaker must give way to the stronger. The leg-al title to the incident must be subordinated to that which is superior, viz.: the legal title to the debt, although the holder of the incident acquired his right first. John and Louis Manss were, therefore, entitled to the proceeds of the mortgaged lands.
The case of Kernohan v. Durham, 48 Ohio St., 1, is relied upon by plaintiff in error. We think it does not support his contention. In that case Coddington took by indorsement the genuine note after due. Kernohan took an assignment of the mortgage which assignment also purported to transfer the note. This was not only before the transfer of the note to Coddington, but before the note was due. The holding is, that, as between Kernohan and McGill (the payee), the former took an equitable title to the genuine note, and hence, as Coddington’s title was acquired after the note had been dishonored, he coitld take no better right than his indorser had. The note being past due he was put upon inquiry, and was chargeable with whatever knowledge due inquiry would have elicited. The vital difference between the position of the holder of the note in that case and in this is, that, while Coddington took his title after clue and hence was charged with all infirmities, John and Louis Manss being- indorsees and purchasers for value in the ordinary course of trade, before due, took g-ood title as against the world.

Judgments afirmed.