## LOSS OF LIEN BY FAILURE TO RECORD ASSIGNMENT OF MORTGAGE.

_ Common Pleas Court of Wood County.

ELECTA CONKLIN V. ROZELL TYLER ET AL.

Decided, September, 1912.

_Assignment of Mortgages—Construction of Act Relating to Failure to Record Assignment Renders Lien Invalid as to Subsequent Purchasers Without Notice—Right of a Purchaser to Rely on the Title as it Appears of Record—Merger—Equity as Between Two Innocent Parties—Sections 8543 and 8546._

1. Where a purchase money mortgage has been executed and delivered to the grantor of the lands conveyed, a reconveyance of the lands to him by the grantee does not cause the greater and lesser estates to meet in him and thus effect a merger, where the mortgage was not surrendered by him upon receiving the reconveyance or at any time thereafter, but had been assigned and thus passed into possession of third parties.

2. Where there has been a failure to record the assignment of a mortgage, a subsequent purchaser of the land in good faith for full value without notice of the assignment takes title free from the lien of the mortgage in the hands of the assignee.

3. Moreover, as between an innocent purchaser of land and the assignee of a mortgage the assignment of which has not been recorded, the act of negligence which caused the conflict of interest was the failure to record the assignment, and the equity of the purchaser of the land is first in time and superior in merit.

_Earl D. Bloom,_ for plaintiff.
_N. R. Harrington,_ contra.

BALDWIN, J.

The plaintiff brings her action to recover judgment on several promissory notes and to foreclose two mortgages given to secure the notes. A jury being waived by the parties, the cause was submitted to the court. The pleadings raise several issues of fact, but the evidence adduced discloses little or no disputed fact. The case must turn on the solution of questions of law,

to determine which of two innocent parties must suffer a loss occasioned by a fraud practiced by another party. The facts so far as necessary to a presentation of the question are as follows:

On and prior to April 7, 1906, the defendant, Sibert, was the owner in fee of the twenty acres of land in Milton township described in the petition. On that day he sold and conveyed the land to James Williams, who made a small cash payment and gave to Sibert the note and mortgage for $1,600 set forth in the first and second causes of action in the petition. The mortgage was duly filed for record on April 12, and was recorded April 18, 1906. On June 22, 1906, Sibert endorsed the Williams $1,-600 note in this manner, "F. M. G. Sibert. This note is held as collateral security for a certain note of $1,200 dated June 22, 1906, and due in 6 mos. 8 per cent.," and delivered the same with the mortgage to Singer & Henderson. Sibert executed an assignment on the back of the mortgage in these words: "I hereby transfer my interest in the within mortgage to Singer & Henderson. F. M. Sibert." This assignment was not witnessed or acknowledged. At the time of said assignment and transfer, Sibert was indebted to Singer & Henderson in the sum of $1,200, which indebtedness was at that time put in form of a promissory note made payable six months hence and bearing 8 per cent. interest, and the assignment of the Williams note and mortgage by Sibert to Singer & Henderson was made as collateral security for the payment of said $1,200 note. The assignment of the Williams mortgage from Sibert to Singer & Henderson was not recorded until November 21, 1911, at which time it was recorded on the margin of the record of the mortgage.

Williams doubting his ability to meet the deferred payment on the land, negotiated with Sibert to take the land back, and on September 3, 1906, Williams by deed of general warranty reconveyed the land to Sibert in consideration that Sibert would surrender up the $1,600 purchase money note and mortgage for cancellation and also to give to him, Williams, a note for $300. Sibert then gave the $300 note and received the conveyance, but represented that the $1,600 note and mortgage was in a deposit box at some bank and he could not produce them

that day but that he would get them and send them to Williams. This Sibert failed to do.

Sibert thus having the legal title to the land, with the mortgage given by Williams to him, appearing of record uncanceled and unassigned, on January 14, 1908, sold and conveyed the land by general warranty deed to the defendants, Rozell Tyler and wife, who purchased the land in good faith for full value, having no notice or knowledge that the Williams mortgage had been assigned by Sibert. Upon purchasing the land, the Tylers entered into immediate possession, which they still retain.

On February 17, 1912, Singer & Henderson transferred the Williams note and mortgage to the plaintiff, making this assignment on the back of the mortgage:

"We hereby transfer our interest in the within mortgage to Electa Conklin. Feby, 17-1912.

"Singer & Henderson."

This assignment was not witnessed or acknowledged and was recorded on margin of mortgage record, September 14, 1912.

The only evidence touching this assignment is the testimony of the plaintiff. She says she bought this Williams note and mortgage from Singer & Henderson, and paid them $1,250 therefor. She does not claim to have purchased the $1,200 note given by Sibert to Singer & Henderson, but only the collateral security. This transfer was made at private sale, and there is no proof that Sibert had any knowledge of the sale, or that he consented thereto.

The $1,200 note given by Sibert to Singer & Henderson secured by the collateral remains unpaid.

Upon these facts the plaintiff contends that she is the owner and holder of the Williams note and mortgage, and is entitled to recover thereon the principal sum of $1,600 and interest, and that the same is a lien upon the lands described in the petition; while the defendants contend that plaintiff has no lien whatsoever on the lands.

Defendants argue that their contention is sustained upon either or all of three different grounds.

*First*, that the reconveyance of the land by Williams to Sibert effected a merger of the Williams mortgage.

If the question of merger depended solely on the facts of the transaction of reconveyance by Williams to Sibert, or upon the state of record in the recorder's office, there could be no doubt that as between Williams and Sibert the mortgage was extinguished or merged in the higher title. But the doctrine does not depend solely upon those conditions, indeed it is unaffected by compliance or non-compliance with recording acts. The first and most essential requisite of a merger is that the greater and lesser estate shall coincide and meet in one and the same person, in the same right and without any intermediate estate. In this case that element is lacking, because at the time Sibert received the reconveyance from Williams, he had assigned and pledged the mortgage to Singer & Henderson as collateral, and though he then had the legal title to the mortgage, which as between him and Williams was extinguished under the terms of reconveyance, the equitable right of Singer & Henderson as pledgees of the mortgage, Sibert did not possess, hence that equitable right—that interest, could not merge in the higher title, or be extinguished, at least so far as concerns third parties.

The view is fully sustained by the holding in *Bell* v. *Tenny*, 29 O. S., 240, which is quite decisive of this proposition. See also *Bank* v. *Mourm*, 22· Atl., 555.

The second ground advanced by defendants is, that because of the failure to record the assignment of the Williams mortgage before the Tylers acquired their title to the lands, the assignees lost their lien as against the purchasers.

Prior to the amendment of the recording act in 1888, no provision was made for recording assignments of mortgages, but by that amendment, now Section 8546, General Code, such assignments are recordable instruments. There was some purpose in making this change in the statute. The only one perceivable is that it was to afford notice, either actual or constructive, to intending purchasers as to the holder of the encumbrance—a recognition of an assignment of a mortgage as an instrument affecting title, and one necessary to be disclosed by the record if the assignee would protect his right and title to the mortgage security against subsequent *bona fide* purchasers and encumbrancers. It seems to me that such an assignment falls properly

within the category of an "instrument in writing for the incumbrance of lands." True it is not an instrument creating the lien, but it is an instrument which supplies a necessary element to a valid mortgage lien, viz., a mortgagee in whom the lien is vested. If this be true then by positive provision of statute, the failure to record rendered the assignment invalid as to the subsequent *bona fide* purchasers. After providing for the recording of mortgages, Section 8543, General Code, makes this requirement:

"Section 8543. All other deeds and instruments of writing for the conveyance or incumbrance of lands, tenements, or hereditaments, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, they shall be deemed fraudulent, so far as relates to a subsequent *bona fide* purchaser having, at the time of purchase, no knowledge of the existence of such former ded or instrument." (R. S., Sec. 4134.)

The determination of this question to my mind might well and safely rest upon the construction of these two sections of the code.

The Supreme Court having under consideration essentially the same question in the case of *Pinney* v. *Bank*, 71 O. S., 173, did not place their decision on the grounds just stated, but by a very convincing course of reasoning reached the same conclusion. I will not take time to review that case, which is familiar to interested counsel. Plaintiff's counsel argues that that case is differentiated from the case at bar because the question arose between a purchaser at judicial sale in a foreclosure of a senior mortgage and the holder by assignment, unrecorded, of a junior mortgage, the person appearing by record to be the holder of the junior mortgage having been made a party defendant in the foreclosure suit.

A purchaser at judicial sale occupies no better position than a purchaser at private sale. The doctrine of *caveat emptor* applies to him in the same manner as to a private purchaser. He may avail himself of all rights concluded by the decree under which he purchased. But the decree itself does not create the right, it is simply the legal determination deduced from the law and the facts in the particular case.

In the case of *Pinney* v. *Bank,* the court held that the failure to record the assignment of the junior mortgage precluded the assignee from asserting the lien of such mortgage against a *bona fide* purchaser, having no actual knowledge of the assignment of the mortgage. The fact that the original mortgagor was a party to the action, and that his rights were foreclosed in the action, does not distinguish the case from the one at bar, because the act of Sibert—by record the apparent holder of the Williams mortgage—in conveying all his interest in the property by deed of general warranty to the Tylers, was an extinguishment of all and every lien he could possibly assert, effected in the most solemn manner known to the law. And the effect is the same as though such act had been pronounced a relinquishment by judicial decree. It is said that the Tylers, being chargeable with knowledge because of the record of the Williams mortgage appearing uncanceled, were guilty of laches in failing to procure a cancellation of the mortgage by Sibert to be entered on the mortgage itself or upon the margin of the record. If they had procured such cancellation in that form under the holding in *Swartz* v. *Leist,* 13 Ohio St., 419, it would have extinguished the lien. Instead of pursuing that method they took the other, that of a conveyance and release of all Sibert's interest in the land, thus complying with the provisions of the Statute of Frauds, Section 8620, General Code, and as before stated employing the most effective means to divest Sibert of all estate or interest in the lands, actual or apparent.

If recording acts mean anything; if intending *bona fide* purchasers without notice of the rights or claims of others have the right to rely upon titles as they appear of record, then by every consideration of justice and right such purchaser should be protected against undisclosed claims of third parties. This conclusion is supported by reason, by the spirit of our recording acts, and by the authority of our Supreme Court in *Pinney* v. *Bank, supra,* and in obedience to that decision as well as upon principle, this proposition must be resolved in favor of the defendants, the Tylers.

This holding renders it unnecessary to consider the third proposition contended for by defendants, viz., that aside from the

questions of merger, and failure to record the assignment, the
equities of the Tylers are stronger and should prevail over the
equities of the plaintiff.

This contention will be briefly considered: When the Tylers
in good faith, for full value and without notice of the assign-
ment of this Williams mortgage purchased these lands, equity
would say that they should have what they bargained and paid
for. Disregarding the recording act this equity would be subse-
quent in point of time to that of Singer & Henderson as holders
of the Williams mortgage, and if the plaintiff stands in the same
position as Singer & Henderson subsequent to her equity.

But the plaintiff does not occupy the same position. She does
not claim to hold the mortgage as collateral, but asserts that she
holds it as an original demand, acquired not only when overdue,
but with the express notice to her borne on the back of the note,
that the legal title was not in Singer & Henderson but in Sibert,
and that the paper was only pledged to Singer & Henderson to
secure another debt. She was bound to know the law that Singer
& Henderson had no right to sell the collateral except at public
sale after reasonable notice to Sibert. She was attempting to
take a title to the paper which she was bound to know that
Singer & Henderson could not confer, and it seems clear that as
against all interested parties other than Singer & Henderson
she had no title either legal or equitable to the paper. Not
imputing to her any actual intention to defraud, yet in a legal
sense she was not a purchaser in good faith. Hence no equity
could arise in her favor as against the equity of the Tylers.

It seems to me that the equities of the Tylers are not only first
in point of time, but superior in merit to those of the plaintiffs.

The same result would be reached by the application of the
familiar equitable doctrine, that where a loss must be suffered
by one of two equally innocent parties, if the act or negligence
of one of the parties made possible the loss, such party must bear
it. It was clearly the neglect of the plaintiff and those under
whom she claims, to record this assignment, which occasioned this
loss, and therefore it must be borne by the plaintiff as between
her and the defendants Tyler.

The other notes and mortgage set forth in the petition are admitted by the defendants, and the right of the plaintiff to recover thereon is conceded. The only question arising thereon is one of costs—depending upon the validity of a tender made by defendant Tyler. It is conceded that on March 29, 1912, the defendants' counsel proffered to plaintiff's counsel as agent for plaintiff, in lawful money a sum sufficient to satisfy the amount of principal and interest then due on this second set of notes and mortgage. It is further conceded that the terms of the proffer or tender are set forth in the affidavit of S. R. Case offered in evidence. This affidavit in substance sets forth that the sum of $1,718 was offered to plaintiff provided she would accept the same in full satisfaction of both mortgage liens asserted in this case and that she would enter a release and cancellation of both mortgages. The plaintiff contends that this proviso vitiates the tender; that inasmuch as the defendants admitted the validity and their liability upon the last set of notes and mortgage and denied any liability on the first, the tender to be effective should have related only to the last mortgage, and that coupling with it a requirement that the first note and mortgage should be canceled and surrendered was imposing a condition to the tender which defendants had no right to require. I do not so regard it. The fact that the plaintiff was asserting several demands does not abridge the right of defendants to make a tender in gross, in satisfaction of all. It is not essential that the tenderer should subdivide the amount tendered and state that so much is to be applied upon the several obligations asserted, or in this case for the defendants in order to avail themselves of the benefit of the tender to say, "We offer you $1,718 in satisfaction of the notes and mortgage given by ourselves, and we tender you nothing in satisfaction of the lien of the Williams mortgage." They did the only thing that could be done by way of tender of the amount they claimed to be due the plaintiff, and having legally tendered all that was then due upon all the demands asserted in this action as hereinbefore determined, they should recover their costs from the plaintiff.

The defendants, James Williams, Charlotte A. Williams, his wife, makers, and F. M. G. Sibert, endorser of the note set forth

in the first cause of action in the petition, are in default for answer. The plaintiff is entitled to personal judgment against them for the amount of the original debt of Sibert to Singer & Henderson, $1,200 and interest thereon from its date to the first day of this term, and also for all the costs herein. The plaintiff is also entitled to personal judgment against the defendant, Rozell Tyler, as principal, and F. M. G. Sibert, as endorser, upon the notes set forth in the third, fourth, fifth and sixth causes of action in the petition, and to a decree foreclosing the mortgage set forth in the seventh cause of action upon failure to pay the amount of the notes secured thereby within ten days from this decree.

The mortgage set forth in the second cause of action is ordered canceled and the clerk to certify its cancellation to be entered on the margin of the record. And the defendants, the Tyler family, will recover their costs herein from the plaintiff. Judgment and decree accordingly; exceptions may be noted.