ORVILLE D. SMITH

*v.*

EDWARD H. SMITH *et al.*

1. FORFEITURE OF CONTRACT—*whether properly declared.* Under a contract for the purchase of land, containing a clause giving the vendor the option to declare a forfeiture in case the deferred payments should not be promptly met, and in case of a declaration of forfeiture to retain the money already paid, as liquidated damages, the purchaser went into possession and made improvements on the premises, but died before the first deferred payment became due. His administrator made payments from time to time, until about three-fourths of the entire purchase price was paid, including the original cash payment made by the purchaser. About four years after the last payment became due, the vendor undertook to declare a forfeiture of the contract, by reason of the non-payment of the second instalment, due about five years before that time, he having, in the mean time, received a partial payment, and given the administrator repeated assurances that he would not declare a forfeiture to the detriment of the parties in interest, and the declaration of forfeiture itself setting forth that a conveyance made by him nearly three years previously, in trust for his wife, was made, in express terms, subject to the conditions of that contract, and the evidence tended to show the original purpose of the declaration of forfeiture was merely to secure to himself the balance of the purchase money remaining unpaid, and which the estate of the purchaser was unable to pay. So it

was *held*, the declaration of forfeiture should not be given effect to deprive the heir at law of the purchaser of his rights as such in the premises.

2. DESCENTS—*equitable title to land.* Where there is a contract for the purchase of land, it descends, in equity, to the heirs of the vendee.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a suit in chancery instituted in the court below, by Orville D. Smith against Edward H. Smith, Sarah C. Broad and Sarah D. Broad, for a partition of certain real estate. Sarah D. Broad filed a cross bill, claiming the entire interest in the property. Upon a hearing, the court dismissed both the original and cross bills, whereupon the complainant in the original bill appealed. The opinion of the court sets out fully the facts of the case.

Messrs. HOWE & RUSSELL, for the appellant.

Mr. J. S. PAGE, for the appellee, Sarah D. Broad.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

June 20, 1855, Walter S. Gurnee entered into articles of agreement with Dexter Broad, for the sale to Broad of ten acres of land, described as southwest quarter southeast quarter northwest quarter section three, township thirty-eight, north range fourteen, east third principal meridian. The contract was on " canal terms," so called, viz., one-fourth cash, balance in one, two and three years, with annual interest on the amount unpaid. Broad covenanted to make the payments as provided, and pay all taxes imposed on the land. The contract also contained the usual clause giving the vendor the right, at his option, to declare a forfeiture of the contract, and to retain all payments as liquidated damages, " in case of the failure of the said party of the second part to make either of the payments or perform any of the covenants on his part hereby made."

And the further clause, that " all covenants and agreements shall extend to and be obligatory on the heirs, executors, administrators and assigns of all the respective parties."

May 26, 1856, said Broad died intestate, leaving Sarah C. Broad, his widow, of whom a posthumous child, Sarah D. Broad, was born in October, 1856, being the only child and heir at law of said Dexter Broad. Orville D. and Edward H. Smith are sons of Sarah C. by a former husband. Amos H. Powers and Sarah C. Broad were appointed administrators June 5, 1856, and proceeded to settle the estate.

The condition of the estate, as appears from the records of the county court, was as follows:

| | | |
|---|---|---:|
| Personal property.......................................... | | $991 26 |
| Widow's award...................................... | $680 50 | |
| Claim of Geo. Atkinson, allowed....................... | 16 .50 | |
| "   "   Wright & McClure ... ...................... | 55 60 | |
| "   "   Orville D. and Edward H Smith............. | 180 25 | |
|       Total....................................... | $932 85 | |
| Leaving a balance from personal estate, less the costs of administration................................. | | $58 41 |

The only other assets belonging to the estate were the Gurnee contract, above described, and the " Springer contract," so called. This contract was also on canal terms, and one-fourth cash had been paid by the intestate. The second payment, $595, fell due December, 1856, after the death of Broad, and was advanced by the administrators. The interest of the intestate in the Springer contract was sold in 1857 by the administrators, by order of the county court, for $1743.59. The net amount thus realized to the estate from this contract was $1168.09, less the attendant expenses of judicial sale; and the result of the whole showing is, that the estate of Dexter Broad had assets to the amount of $1100 to meet the payments due on the Gurnee contract, the personal estate being consumed, as above shown, in the payment of debts, and this amount only being realized from the Springer contract.

The following payments were made on the Gurnee contract by the administrators, being all that were made by them:

| | | |
|---|---:|---:|
| June 20, 1856 | $ 370 | 00 |
| June 23, 1856 | 630 | 00 |
| August 5, 1857 | 1100 | 00 |
| August 11, 1857 | 34 | 72 |
| June 19, 1858 | 200 | 00 |
| Total | $2334 | 72 |

There was due on the Gurnee contract, June 20, 1858, at its maturity, allowing interest on the balances due, as provided in the contract, $1019.58.

Immediately after the death of Dexter Broad, his brother, Ira Broad, of Massachusetts, since deceased, advanced to the widow, in addition to some small amounts, $1400 to assist the family, and to save the contracts from forfeiture. From this money there was paid on the Gurnee contract $630, and on the Springer contract the entire second payment, $596.50.

Mr. Powers did most of the business in the settlement of the estate, and, as administrator, made payments on the Gurnee contract, as above specified, which, together with the cash payment of $1000, made by Dexter Broad in his life time, amounted to $3334.72.

By deed dated August 5, 1859, recorded December 23, 1859, Gurnee and Mary M. his wife, conveyed, for a nominal consideration, the above property, with a large amount of other real estate, to M. D. Coe, to be held in trust, to pay the rents and profits thereof to said Mary M. upon her sole receipt; and to sell any portion of said real estate, upon direction therefor in writing from her.

By an instrument dated and acknowledged June 14, 1862, and filed for record December 29, 1862, said Coe and W. S. Gurnee purport to elect to declare a forfeiture of said contract by reason of the failure to pay the instalments falling due June 20, 1857, and subsequently, and the taxes.

By deeds bearing date December 29, 1862, and pursuant to written request therefor, of the same date, from Mary M. Gurnee, said M. D. Coe purported to convey a life estate in the west two-thirds of said ten acres to said Sarah C. Broad, and, subject to said life estate, to convey the same in fee to said Orville D. and Edward H. Smith and Sarah D. Broad, both which deeds were filed for record January 5, 1863.

On the execution of the contract, Dexter Broad took possession of and fenced the entire ten acres, and the widow and children have occupied the portion conveyed to them, and are still in possession thereof.

The complainant in the original bill seeks a partition of the fee, based upon the deed of Coe to him, and the said Edward H. Smith and Sarah D. Broad, each for one-third thereof. Said Sarah D. being still a minor, makes answer by her guardian *ad litem*, claiming that said deeds, so far as they convey the portions of the property to Orville D. and Edward H. Smith, and Sarah C. Broad, were erroneously and wrongfully made, and that she, as the only heir at law of Dexter Broad, is entitled to the entire fee in said property, and, by way of cross bill, she asks that the grantees be decreed to convey the titles held by them to her, accordingly.

The answers of Orville Smith and Sarah C. Broad, admit the contract with Gurnee, but claim that, in accordance with its provisions, a valid forfeiture was declared; that the conveyance of the west two-thirds was a gift from Coe, and made as such to mitigate the hardships of a strict enforcement of legal rights. They set forth at length the condition of the estate of Dexter Broad; that a large part of the payments on the contract were made from funds advanced by Ira Broad; that said Orville and Edward Smith were also creditors of the estate, and agreed to and did release their claim against the estate; that the deeds were made with full knowledge of their contents on the part of all the adult parties concerned, and with the sanction of said Ira Broad; that though made and accepted as a free gift, yet the real equities of all parties were

regarded, and the true interests of the infant were consulted and provided for by the settlement.

Formal answer of guardian *ad litem* of Edward H. Smith, submitting his rights to the court.

A decree *pro forma*, dismissing the bill and cross bill, was rendered by the court below.

The position taken by the complainant, that, by the declaration of forfeiture of June 14, 1862, Sarah D. Broad was divested of all interest whatever in the land in controversy ; that it was then at the absolute disposal of the vendor, or his grantee, and that the conveyance by Coe of December 29, 1862, was a gift of the property to the grantees in that deed, which they took, unaffected by any equity of Sarah D. Broad, the heir, and that she had no right to question the same, we do not think to be maintainable.

A default under the contract had taken place, in not paying the last instalment and taxes, but it was acquiesced in by the vendor. He never manifested an intention that it should work a forfeiture of the equities that had arisen under the contract, but even recognized them, and expressed the purpose to protect them.

There was the following testimony bearing upon this point :

Mr. Whitney testifies : That he had as many as a dozen interviews with Mr. Gurnee on the subject. " He almost invariably said, he would do what was right ; would take no advantage of them ;" and that he don't recollect anything was said by Gurnee in regard to the contract being forfeited " until nearly the time of settlement ; then there was." And in these " final interviews," he further says : " I afterwards stated to Mr. Gurnee that if he took back land enough to pay himself with, I thought that would be fair. I stated to Mr. Gurnee my views upon the property, and he assented to my views, and said he would settle so."

Mrs. Broad testifies : "Mr. Gurnee never said anything about forfeiture until the last. He said if I could not make my payments he would have to declare a forfeiture. This was about

14—55TH ILL.

the time of the last arrangement. He was very lenient, because he waited so long for payments to be made." This "last arrangement" spoken of, was late in 1862.

Mr. Gurnee also testifies: "From the date of the contract, and the subsequent conveyance, I should think latitude had been allowed; some indulgence allowed. I should judge so from the dates, and that is my recollection."

Mr. Powers testifies that he made all the payments to Gurnee with moneys left by Mr. Broad, or procured from Ira Broad. He says: "My memory is distinct, that he (Gurnee) has told me that he should not take advantage of the payments not being made just when they were due. I had a conversation with him once, with reference to a compromise. He said, if the estate could not pay the balance, he wanted it settled up, and would make an equitable division of the estate. He, at one time, told me that, in order to do that, he must declare a forfeiture. * * * The conversation with Gurnee, above referred to, was previous to June, 1862." "Mr. Chase stated to me that Mr. Gurnee was not a man to take advantage of payments not being made just as they were due." "Those statements of Gurnee and Chase had an influence upon my conduct in making the payments. If I had not been assured that Mr. Gurnee would do what was fair and equitable, I should have sold that contract as I did the Springer contract. I mean by assurance, the statements as above stated."

The very declaration of forfeiture recites, that the said premises were conveyed by Gurnee to Coe (which was August 5, 1859), "subject to the conditions of said contract" (the one in question).

There does not appear to have been any especial design to make the Smith children objects of the vendor's bounty.

Mr. Whitney says: "Mr. Gurnee stated, that he would make a transfer of the property, as we should agree." "I suggested to him that he make a life lease, or bond, to Mrs. Broad, and then divide the property into three equal parts for the children. He said he would do it any way that suited the

family. I conferred with Mrs. Broad, and she thought it was right, and assented to it. I think I went up immediately to Mr. Gurnee's with her, and gave him the result of consultation with her, she giving her consent."

From the whole case, the declaration of forfeiture would seem to have been made, rather with a view of benefit to the remaining interest of the vendor in the ten acres, for the purpose of ridding the title to it from the embarrassment of the contract, than to destroy the interest of the vendee, or his heir, under it.

The recording of the declaration of forfeiture, on the twenty-ninth of December, 1862, the same date with the deed from Coe, is a circumstance tending in that direction.

The equities in this case then had never been denied, but yielded to by the vendor. After consultation and negotiation with those most interested in the welfare of the family, those equities were satisfactorily adjusted and determined upon, as being a right to the west two-thirds of the land. As we regard it, the conveyance was made in recognition of that equitable estate, for the purpose of completing the title to it, by uniting the legal estate with it, and not with the view of making a gift to the grantees. It seemed to be indifferent to the vendor, what particular person was named as grantee in the deed, but he conformed to the wishes of Mr. Whitney and the widow in this respect, and executed the deed to her three children, subject to a life estate in herself.

In doing so, a due regard was not had to the rights of the infant, Sarah D. Broad. She was the sole heir at law of Dexter Broad, and, as such, the whole equitable interest in the land, growing out of the contract, and the payments made under it, belonged to her; and to her alone, as the owner of the equity, the legal estate should have been conveyed. Where there is a contract for the purchase of land, it descends in equity to the heirs of the vendee. 2 Story Eq. Ju. secs. 790, 1212; *Champion* v. *Brown,* 6 Johns. Ch. R. 400. The other

grantees in the deed with her, not being purchasers for a valuable consideration, but mere volunteers, took the legal estate conveyed to them, subject to her equity, and hold the same merely as trustees for her.

The *pro forma* decree, dismissing the cross bill in this case, was erroneous, and the decree is reversed and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*