AXEL GRANDJEAN, APPELLANT, V. JEROME BEYL ET AL., APPELLEES.[*]

FILED FEBRUARY 8, 1907.   No. 14,660.

1. **Descent and Distribution: LAND CONTRACT: INTEREST OF VENDEE.** A vendee in possession of land under a contract of purchase, on which part of the purchase price has been paid, holds equitable title to the land, which on his death descends to his heirs.

2. **Curtesy.** Under our statute the husband is not entitled to an estate by the curtesy in lands of his deceased wife held by her under a contract of purchase. The estate of the wife to which the estate of curtesy may attach must be at the least a freehold.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sinclair* and *Warrington & Stewart*, for appellant.

*J. H. Linderman,* contra.

DUFFIE, C.

Brief of counsel for appellant contains so plain and fair a statement of the facts in the case that we adopt it here: "Marie Grandjean died intestate in Dawson county on the 3d day of January, 1902. She left no children, but did leave surviving her Axel Grandjean, her husband, who is the appellant, and three brothers, who are the appellees. At the time of her death she was the owner of an undivided one-half interest in four certificates of purchase of certain school lands of the state of Nebraska, the principal to become due on March 13, 1913, with interest

---

[*] Rehearing allowed. See opinion, p. 354, *post.*

payable annually. This constitutes her estate. Probate of the estate was begun, and in that court arose the present controversy, which is: Has the surviving husband any rights in the estate? It is contended on the part of the husband that these certificates and the interest created by them are choses in action—personalty—and descend to him under the statute. On behalf of the brothers it is claimed that these are executory contracts for the purchase of land, and the interest created by them is realty, and as such descends to them under the statute freed from any claim or right of the husband arising from the marital relation. In reply to this claim the husband asserts that, if the court should determine this estate to be realty, he then has an estate by the curtesy therein, which should be adjudged him. These several contentions were heard in the probate court and were determined against the appellant. He appealed to the district court and was again beaten. The district court found that the estate was realty and descended to the brothers freed from curtesy. He appeals to this court, and for grounds of reversal, alleges: (1) The appellant is entitled to a judgment on the pleadings; (2) the judgment is not sustained by the evidence; and (3) the judgment is contrary to law."

The facts above set forth require us to determine (1) whether the interest in the lands held by Mrs. Grandjean under her school land sale contracts was personal property or real estate which descends to her heirs; and (2) if her interest was real estate which her heirs would inherit, is her husband, the appellant, entitled to an estate by the curtesy therein? In *Hendrix v. Barker*, 49 Neb. 369, the following was held: "In an executory contract for the sale of real estate equity treats the vendor as the trustee of the purchaser and the purchaser as the trustee of the purchase money for the vendor. This rule rests upon the doctrine that equity considers that done which ought to be done." This rule was followed in *Jewett v. Black*, 60 Neb. 173, and it is the generally prevailing rule adopted

by all courts.  Another principle is deducible from this rule, viz., that, where there is a contract for the purchase of land on which partial payments have been made, the vendee holds the equitable title, which, on his death, descends to his heirs.  *Smith v. Smith*, 55 Ill. 204; *Champion v. Brown*, 6 Johns. Ch. (N. Y.) *398; 10 Am. Dec. 343; 2 Story, Equity Jurisprudence (13th ed.), secs. 790, 1212. This interest is in equity real estate and descends to the heirs of the purchaser.  *Strauss v. White*, 66 Ark. 167; *Braxton v. Braxton*, 20 D. C. 355; *Smith v. Smith, supra*; *Kellogg v. Logan*, 38 Ia. 688; *Griffith v. Beecher*, 10 Barb. (N. Y.) 432; *Champion v. Brown, supra*.  It is true, as stated in appellant's brief, that the principles above announced are based upon the doctrine of equitable conversion, *i. e.*, that a court of chancery will treat personalty as realty and realty as personalty when the equities of the case demand it.

It is insisted by appellant that, when the contract of sale is executory, equity will not apply the doctrine as a matter of course; that equity will not regard that as having been done which may not be done for some cause arising out of the contract, the relation of the parties, or the law; that, if sufficient cause appear upon examination of the contract, equity will not convert what is primarily personal property into real estate.  Without doubt this is the general rule, and so, too, the further rule obtains that, in order to work a conversion of a contract for the sale of real estate into realty, "the contract must be valid and binding, free from inequitable imperfections, and such as a court of equity will specifically enforce."  3 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1161; *Keep v. Miller*, 42 N. J. Eq. 100.  In the case last cited it is said: "A valid and binding contract of sale, such as a court of equity will specifically enforce against an unwilling purchaser, operates as a conversion.  The cases in which the court has refused to decree that a contract for sale works equitable conversion, are those in which the contract was such as equity would not enforce."  The cases above cited

undoubtedly announce a rule generally adopted, but it must be accepted with this qualification: That to bring the rule into operation the cause which renders the contract unenforceable must apply to the contract itself. *Curre v. Bowyer,* 5 Beav. (Eng.) 6, and note.

The appellant insists that the contracts held by Mrs. Grandjean are unenforceable against her, and constitute only an option on her part to purchase at the price named therein upon payments of principal and interest to be made at the several dates specified. The contracts recite: "That the state of Nebraska has sold unto E. M. F. Leflang the lands therein described for the sum of $400, one-tenth of the purchase price cash in hand and the remainder in 20 years time, with interest at the rate of 6 per cent. per annum, interest payable annually in advance on the first day of January of each year according to the tenor and effect of a certain promissory note given by the said E. M. F. Leflang for the unpaid purchase money for said lands." It is true that the purchaser did not sign this contract, but the contract recites that he has signed a note by which he has bound himself to pay the purchase price, both principal and interest, and, while it may be true that there is no special provision of our statute relating to the sale of school lands directing the execution of a note by the purchaser, or directing the officer having charge of such sales to institute suit upon such note, we know of no principle of law which would prevent the state from enforcing payments thereon. Nor do we think it can be denied that, upon full performance on the part of the vendee, the state would be compelled to execute a deed. In this state we have held that an agreement signed by the vendor alone, if accepted by the vendee, is valid and may be specifically enforced. *Robinson v. Cheney,* 17 Neb. 673. We hold therefore, that a vendee in contracts of the character of the one in question is the equitable owner of the lands described in such contracts, and that on his death they descend to his heirs.

Having determined that the interest held by the deceased

was an equitable interest in land which descends to the heirs, the second question is: Did she hold such title thereof or interest therein as entitles her husband, the appellant, to an estate by curtesy? In *Butler v. Fitzgerald,* 43 Neb. 192, it was held: "The statute of this state, prescribing in what real estate of the husband a wife shall be entitled to dower, is but declaratory of the common law." The same may be said of real estate held by the wife and in which the husband is entitled to an estate by curtesy. The language of the statute, so far as it relates to the facts in this case, is as follows: "When any married woman, seized in her own right of any estate of inheritance in lands, shall die leaving no issue, the land shall descend to her surviving husband during his natural lifetime as tenant by curtesy." Section 29, ch. 23, Comp. St. 1905. At common law the husband was entitled to an estate by curtesy only in lands of which his wife was "seized" at the time of her death, and seizin is defined to be "the possession of land under a claim, either express or implied by law, of an estate amounting at least to a freehold. Ordinarily, a possession in fact by one having or claiming a freehold interest." Anderson's Law Dictionary, 933. The estate of the wife to which the estate by curtesy may attach must be a freehold of inheritance. *Mildmay's case,* 1 Coke (Eng.), 175; *Mullany v. Mullany,* 4 N. J. Eq. 16. To be tenant by curtesy the wife must be seized in deed. *Stevens v. Smith,* 4 J. J. Marsh. (Ky.) \*64, 20 Am. Dec. 205; *Jackson v. Johnson,* 5 Cow. (N. Y.) 74, 15 Am. Dec. 433; *Tayloe v. Gould,* 10 Barb. (N. Y.) 388. An estate by curtesy is analogous to the estate of dower, and in *Greenbaum v. Austrian,* 70 Ill. 591, it was held that the widow of one who in his lifetime had not paid the entire purchase money on a contract of purchase is not entitled to dower in such land, when there is not sufficient personal estate of the deceased out of which to complete the payment of purchase money. In *Walters v. Walters,* 132 Ill. 467, 23 N. E. 1120, the court

26

said: "The holder of a contract to convey upon the performance of certain conditions, which have not been fully complied with at the time of his death, has no estate to which a right of dower will attach." To the same effect is *Pugh v. Bell,* 2 T. B. Mon. (Ky.) *125, 15 Am. Dec. 142. These cases are in accord with our former holdings in *Crawl v. Harrington,* 33 Neb. 107; *Hall v. Crabb,* 56 Neb. 392, and *Cutler v. Meeker,* 71 Neb. 732. Our statute declares that the wife must be seized of an estate of inheritance in the lands in order to entitle her husband to curtesy. The term "seized" has always been construed in its common law sense as applicable to legal estates only, and the statute has been received as a declaration only of the common law rule of curtesy. *Cornog v. Cornog,* 3 Del. Ch. 407. The decedent neither held nor claimed a freehold interest in the land described in her school land contracts. She was not, in the language of our statute, "seized" of those lands, and her husband is not entitled to curtesy therein.

We recommend an affirmance of the decree appealed from.

Albert and Jackson, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree appealed from is

Affirmed.

The following opinion on rehearing was filed December 18, 1907. *Former judgment of affirmance adhered to:*

Courts: Stare Decisis. When a former decision of this court has established a rule of property, which has been relied upon for many years as the foundation of real estate titles, the court will not overturn such rule although it cannot assent to the reasoning upon which it is based.

Sedgwick, C. J.

The opinion upon the former hearing, which states the facts involved in this controversy, may be found *ante,* p.

349. Two principal questions were there determined—that a vendee in possession of land under a contract of purchase upon which he has paid a part of the purchase price has equitable title in the land which on his death descends to his heirs, and that a surviving husband is not entitled to an estate by curtesy to the lands of a deceased wife held by her under such contract of purchase. Both of these propositions are vigorously attacked.

1. This court is fully committed upon the first proposition. In *Dorsey v. Hall*, 7 Neb. 460, it was said: "Where a contract is made for the sale of real estate, equity considers the vendor as a trustee of the purchaser for the estate sold, and the purchaser as a trustee of the purchase money for the vendor." This holding was approved in *Burrows v. Hovland*, 40 Neb. 464, and in many subsequent decisions. There may be some reason for argument as to the application of this principle to contracts of purchase of school lands from the state. The law provides that the title to school lands vests in the state upon the failure of the purchaser to make the payments provided for in his contract. No proceedings for that purpose are necessary on the part of the state, but by the mere failure to make the payments the rights of the purchaser in the land are forfeited. This court has refused to make such a distinction. In *Cutler v. Meeker*, 71 Neb. 732, the contract was one for the sale of school lands by the state, and it was held: "The interests of a vendee in possession of real estate under a contract of sale, part of the purchase price of the land having been paid, at his death, descends to his heirs, and does not pass to his administrator. It is alienable, descendible and devisable in like manner as if it were real estate held by a legal title." The law therefore must be considered settled in this state upon this point.

2. The reasoning supporting the second proposition is not so satisfactory. In *Crawl v. Harrington*, 33 Neb. 107, it is said: "The legal title still remained in the state. It was not, therefore, an estate of inheritance, and the wife

took no dower therein. This disposes of the case without considering the other questions presented." Thus it appears that in this case the wife was not allowed dower in the land solely because the estate was not an estate of inheritance.

In *Hall v. Crabb,* 56 Neb. 392, it is said: "The equitable interest which Lorina McCully had in the land in controversy at the time of her death was less than a freehold estate, and consequently, under the authority above cited was not an estate of inheritance. Her husband was, therefore, not entitled to a tenancy by curtesy in this land, and accordingly the judgment of the district court is affirmed." Thus, it appears that in this state the surviving husband was denied the right of curtesy in the land held by his deceased wife under contract solely because the estate of the wife in the land was not an estate of inheritance. This court has many times held, as already shown, that one who holds a contract of purchase of real estate, has made payments thereon, and is in full possession of the real estate, has an interest in land that upon his or her death descends to his or her heirs; that is, the heirs inherit the estate, and yet for the purpose of denying the right of dower or curtesy we are compelled to hold that an estate which the heirs take by inheritance is not an estate of inheritance. This apparent absurdity seems to have been derived from some supposed technical definitions of the common law, yet it is difficult to see how they can be applicable under the provisions of our statutes. So far as we can see the position is wholly indefensible upon reason.

There are, nevertheless, very strong reasons for adhering to the rule established in *Crawl v. Harrington* and *Hall v. Crabb, supra,* upon the ground that it has become a rule of property. The statute under which these decisions are made has been repealed and a new statute substituted therefor. Thousands of acres of land have been conveyed in this state by the two great land grant railroads, one of whose lines extends through the state the

entire length from east to west, and whose land grant took every alternate section for a width of twenty miles. Thousands of acres have been sold under contract also by the state in the conveyance of its school lands. Much of this land in the natural course of events must have descended to the heirs of the original purchasers, and in all probability much of it has been sold by them under the authority of these decisions free from any cloud or claim created by the assertion of the rights of dower or curtesy. To overrule these cases would in all probability be provocative of much litigation and controversy. People who purchased relying upon the strength of these decisions being the settled law of the state would find their titles clouded by an outstanding dower right or right of curtesy, and find themselves liable to be called upon to account for rents and profits during the time the outstanding estate existed or at least as long as the statute of limitations will permit. To overrule these cases would penalize many persons whose money was invested on the strength of these decisions and would introduce uncertainty into the law relating to real property. The courts have always been reluctant to change or overrule decisions which have established rules of property under which rights may have been acquired. *Reid v. Wayne Circuit Judge,* 132 Mich. 406, 93 N. W. 914; *Sacramento Bank v. Alcorn,* 121 Cal. 379, 53 Pac. 814; *Smith v. Ferries & C. H. R. Co.,* 51 Pac. (Cal.) 710; 11 Cyc. 755. The fact that this is the first action in which the right has been asserted during all these fifteen years shows that the people of the state have doubtless relied upon these decisions. In *Brader v. Brader,* 85 N. W. 681, 110 Wis. 423, it is said: "Where valuable property rights have grown up in reliance on a rule established in a decision rendered ten years prior, the court will not depart from the rule, though it does not assent to the reasoning on which it was based." The legislature has already abolished the estates of dower and curtesy, and we deem it improper and at variance with the ordinary prac-

tice of courts to overturn a rule of property which has been in existence for so many years.

For these reasons, we are compelled to adhere to our former decision.

AFFIRMED.

BARNES, J., dissenting.

I find myself unable to concur in the conclusion reached by my associates, and the discussion contained in the prevailing opinion furnishes me a sound reason for my dissent. It is there clearly shown that the conclusion is wrong and amounts to a nullification of a positive statute which gives the appellant an estate of curtesy in the land in controversy. While I recognize the binding force of the doctrine of *stare decisis* and of the rule of property, I do not think they require us to adhere to a former decision where it is clearly wrong and is opposed to a plain provision of our own statutes. When there are two reasonable solutions of a question, both having support in principle and precedent, and the court has adopted one of them and has adhered to that view, until it has become a rule of property, then that rule applies, but it should not be invoked to sustain a rule which was absurd and clearly wrong in its inception. Again, I am not able to convince myself that the serious consequences anticipated by my associates would follow a correct decision of this case. I think I may say that it is a matter of common knowledge that the land grant railroads, mentioned in the prevailing opinion, adopted and, so far as we know, have carried out a rule which required both husband and wife to join in the assignment of its contracts of sale; and, so far as state school land contracts are concerned, the records of this court show so few cases where any controversy has arisen over the matter here in question that I am persuaded that no serious disturbance of property rights will arise by reason of a decision which will give to the appellant what in law and reason he is clearly

entitled to receive. I am therefore of opinion that our former judgment should be set aside, and the judgment of the district court should be reversed.