FIRST NATIONAL BANK OF FALLS CITY, APPELLANT, V. SAMUEL EDGAR ET AL., APPELLEES.

FILED JULY 1, 1902. No. 10,990.

Commissioner's opinion, Department No. 1.

1. **Bond for Deed:** PURCHASE PRICE: NOTES: RESERVATION OF LEGAL TITLE: MORTGAGE. Where the vendor of real estate executes to the vendee a bond for a deed, the vendee giving notes for the purchase price, the reservation of the legal title by the vendor is security for the payment of the purchase price, and upon default of the vendee, the vendor may treat the contract as a mortgage, and foreclose it as such.

2. ——: ——: ——: TRANSFER OF ONE OR MORE NOTES. When the vendor transfers one or more of a series of notes, given for the purchase price, executed by the vendee under a bond for a deed, such assignment carries with it an equitable assignment *pro tanto* of the lien of the vendor upon the land conveyed.

3. **Assignee:** JUDGMENTS OF RECORD. The assignee of the purchase-money notes given by the vendee takes subject to judgments of record against the vendor at the time of the assignment.

4. **Rights of Assignee.** The rights of the assignee of purchase-money notes given by the vendee under a bond for a deed, as against a mortgagee or purchaser in good faith, are to be determined by the recording acts of the state rather than by the law of negotiable instruments; and if the assignee fails to procure from the vendor, and record, an assignment of the notes to him, a subsequent purchaser or incumbrancer of the vendor, without notice of the assignee's rights, will be protected.

5. **Lien of Judgment.** The lien of a judgment obtained against a vendor who has given a bond for a deed, attaches only to the purchase money remaining unpaid and due to the vendor.

APPEAL from the district court for Richardson county. Heard below before STULL, J. *Reversed.*

*Edwin Falloon,* for appellant.

*Reavis & Reavis, Clarence Gillespie,* and *Arthur J. Weaver, contra.*

KIRKPATRICK, C.

This is a foreclosure suit brought in the district court of Richardson county by the First National Bank of Falls City against Samuel Edgar and others, to foreclose a lien which the bank claimed on certain land, arising out of a sale of the land made by Samuel Edgar and Martha Edgar, his wife, to William T. Nutter. A better understanding of the questions requiring determination may perhaps be had by stating briefly the facts and circumstances of the case, as disclosed by the record, before the pleadings of the respective parties are mentioned. On February 21, 1894, Samuel Edgar and wife were the owners of forty acres of land in Richardson county, and on that day sold it to Nutter, executing to him a bond for a warranty deed. Nutter agreed in consideration of the purchase to make payments for the land as follows, the payments being set out in the bond: $25 in cash on the day of making the contract; $225 on June 15, 1894; $300 on June 15, 1896; $300 on June 15, 1897; and $300 on June 15, 1899. The bond was placed of record March 6, 1894, and Nutter thereupon went into possession, and has so remained ever since. Promissory notes were given by Nutter to Edgar for each of the deferred payments, but the notes were not mentioned or in any manner referred to or described in the bond. About March 15, 1894, Edgar sold one of the $300 notes to Ellis F. Prine, who was by the trial court allowed to intervene and set up his lien. On December 4, 1894, Peter Frederick recovered a judgment against William Robison, and Samuel Edgar and Lee Palmer, his sureties, in the county court of Richard-

son county, in the sum of $319.30 and costs, which judgment was on January 10, 1895, duly transcripted. On January 15, 1895, Edgar indorsed and transferred the other two of the $300 notes to appellant, the First National Bank of Falls City. On July 22, 1895, Edgar and his wife executed to Mary L. Wiltse a mortgage on the land in controversy, which was duly recorded, to secure a note for $300 given for borrowed money. Leroy Palmer was allowed to intervene and set up ownership in himself of the judgment obtained by Peter Frederick, who filed a disclaimer.

The pleadings and evidence disclosed that Nutter paid the $25 and $225 payments mentioned in the bond, and made one or two small payments on notes representing the other payments. It is further disclosed by the record that in December, 1896, Samuel Edgar brought a suit of foreclosure against Nutter, claiming at that time to be the owner of the notes; procured a decree, sale and confirmation, being himself the purchaser. This proceeding seems to have been ineffectual for want of proper parties, and was in the proceedings at bar canceled and set aside on the petition of appellant, and no complaint is made of the action of the trial court in that regard. The pleadings filed by the respective parties set up their several claims. Trial was had, which resulted in a finding and decree giving Palmer a first lien for $241.35, M. L. Wiltse a second lien for $341.88, appellant First National Bank a third lien for $413.50, and Ellis F. Prine a fourth lien for $374.30. Subsequently, Jerome Wiltse intervened, and set up a tax lien, and in a supplemental decree he was given a lien prior to that of all others for $33.73. From this decree the First National Bank alone appeals.

The first question requiring consideration is the character of the title or lien that vendor Edgar had in the premises. He had entered into a contract of sale with Nutter; he and his wife had executed a bond for a deed; he had surrendered possession to Nutter, and had accepted certain payments which Nutter had made on the

contract. The rule is well settled in this state that in an executory contract for the sale of land, the equitable title in the property vests in the vendee, and the vendor retains the legal title as security for the deferred payments of the purchase price. *Jewett v. Black,* 60 Nebr., 173. In the case of *Hendrix v. Barker,* 49 Nebr., 369, this court said: "In an executory contract for the sale of real estate, equity treats the vendor as the trustee of the purchaser, and the purchaser as the trustee of the purchase money for the vendor." Again, in the same case it is said: "In such a contract the vendor, upon default made by the vendee, may treat the contract as an ordinary real estate mortgage and foreclose it as such."

The next question we are required to determine is what interest in the purchase money due under the contract did the First National Bank of Falls City, appellant, and Ellis F. Prine, obtain when they purchased the notes which had been given by Nutter to Edgar as evidence of payments to be made. It is contended in the briefs that the only lien which Edgar had in the premises was that of a vendor, and that the lien of a vendor is a personal lien, which he could not transfer, and that, therefore, appellant and Prine, in purchasing the Nutter notes, acquired no right or interest in the land which the vendor had. We are unable to agree to this conclusion. Under the law of this state, the vendor's lien as recognized by the authorities cited in briefs in this case, has no existence. The distinction between a vendor's lien and the kind of lien held by the vendor in this case is very clearly stated in the case of *Graham v. McCampbell,* 19 Tenn., 52, where it is said: "Unpaid purchase money secured by a mortgage of the property sold, or simply by a reservation of the title in the seller, draws after it when assigned the security provided for its payment. Hence, in sales of land, when the vendor gives his bond for title, and the purchaser his note for the money, an assignee of one of the notes may, without more, subject the estate to the payment; as he may, also, in the case of a mortgage." Again, it is said: "But if the

title pass out of the vendor by conveyance, his equitable lien does not pass to an assignee of the purchase money." There seems to be a hopeless conflict of the decisions of the courts upon the question of whether a mere vendor's lien as recognized in some of the states, not being a lien reserved by the deed or secured by mortgage, is transferable by assignment. But that question is wholly immaterial here. The situation of the vendor Edgar in this case is aptly described by Justice Brewer in *Stevens v. Chadwick*, 10 Kan., 406, 412, in the following language: "But here the title is not parted with. By contract it is to be retained till the price is paid. The agreement of the vendor substantially is this: When you pay the price, you can have the title; till you pay, I retain it. The title is held as security for the price. The vendee can not compel a conveyance till he pays the price, not even, says the supreme court of Alabama, though the notes given for the price are barred by the statute of limitations and no recovery can be had thereon"—citing *Driver v. Hudspeth*, 16 Ala., 348. In the case of *Moore v. Anders*, 14 Ark., 628, it is said: "The assignment of a note for the purchase money thus secured, tacitly carries with it, as an incident to the debt, the vendor's lien reserved by the contract of sale; and the assignee may sue at law upon the note, and proceed in equity in the nature of a bill for foreclosure against the vendee and any person claiming under him, to subject the land to the payment of the original purchase money." See also *Gessner v. Palmater*, 13 L. R. A. [Cal.], 187; *Nashville Trust Co. v. Smythe*, 27 L. R. A. [Tenn.], 663. We conclude, therefore, that the lien upon the premises created by the reservation of the title in the vendor was such as could be assigned.

It is now necessary to examine the question of priorities between the several parties interested. The appeal of the bank having brought the entire case to this court for review, it will be necessary to determine the priorities of all parties interested. *Huffman v. Ellis*, 52 Nebr., 688. It is disclosed by the record that the judgment under

which appellee Palmer claims, was filed in the district court on January 10, 1895. This became a lien upon the unpaid purchase price due to Edgar from the date of its filing. *Courtnay v. Parker,* 16 Nebr., 311; *Olander v. Tighe,* 43 Nebr., 344. In the case of *Wehn v. Fall,* 55 Nebr., 547, this court said: "But a judgment of the district court, against a vendor of land who retains the legal title, attaches as a lien to such land, and, as against a vendee in possession with actual notice, may be enforced to the extent of the unpaid purchase price." Again, in the same case, it is said: "Under these circumstances Smith became entitled to intercept the purchase money and have the same applied in satisfaction of his judgment upon giving Wehn notice of his rights." Appellant bank having obtained its assignment of the notes under which it claims on January 14, 1895, four days later than the transcripting of this judgment, it was its duty, before taking the notes, to examine the judgment record, and ascertain what, if any, lien there was upon the land, or upon the purchase money due under the contract; and it will be presumed to have done so, and to have ascertained that the right of Edgar to assign any portion of the purchase money due under the contract was subject to, the then-existing judgment of record. In the case of *Moyer v. Hinman,* 13 N. Y., 180, 183, it is said: "Parties who deal with the debtor respecting his lands subsequently to the docketing of the judgment, are affected with notice. Such persons may make themselves perfectly safe in that particular, by searching the docket book of judgments in the proper office; and they will, of course, abstain from purchasing if they find the land which they are proposing to buy, incumbered by a judgment." This language was quoted with approval in *Filley v. Duncan,* 1 Nebr., 134, 140. It is therefore clear that the lien of the bank is subject to that of the judgment of Palmer, and was correctly so determined by the trial court.

The trial court gave Mary L. Wiltse a second lien for the amount due on her mortgage, making her lien prior to

that of the appellant bank; and complaint is also made of this action. It is disclosed by the record that the bank took the two notes under which it claims, by indorsement from Edgar, January 14, 1895, and that M. L. Wiltse took her mortgage upon the premises from Edgar on July 22, some six months later. At the time M. L. Wiltse took her mortgage she was, aside from notice of the rights of Nutter in possession, chargeable with notice of what the record disclosed regarding the title to the land. As has been heretofore stated, the bond contained no description of or reference to the notes, and there was no notice of record from which Mrs. Wiltse could infer that notes had been executed. In dealing with Edgar she had a perfect right to deal with him upon the theory that he was the holder of the legal title as security for the payment of the unpaid purchase price from Nutter, whatever amount that might be. In the case of *Ogle v. Turpin*, 102 Ill., 148, it is said: "There being no presumption of law that the payee of notes secured by mortgage has transferred the same before purchasing the equity of redemption from the mortgagor, a person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage have been assigned, but he may rely upon the record, as showing title in his mortgagor." In the case at bar, there was not only no presumption that Edgar had assigned the promissory notes given for the purchase price, but there was no presumption that promissory notes had in fact ever existed. Having ascertained from the record of the bond that $900 of the purchase price was by the terms of the bond not yet due, Mrs. Wiltse had a right to expect that her mortgage would be a valid lien upon the land in case the purchase was not completed, and, in the event that it was completed, an equitable lien upon the purchase price remaining due. Under the recording acts of this state, it was the duty of appellant, if it relied upon the security of the contract, or upon the title which Edgar retained, to have taken from Edgar an

assignment *pro tanto* of his interest and placed the same of record. If this had been done, Mrs. Wiltse, by examining the record, could have ascertained that the bank had an interest in the purchase money due from Nutter to the extent of $600 and interest. Having ascertained this fact, she could have withheld her money or made the loan at her option. In *Ogle v. Turpin, supra,* it was said: "An assignee of notes secured by mortgage may protect his equitable lien on the mortgaged premises, by taking and putting upon record an assignment of the mortgage, so as to give notice of his interest, and thereby prevent others from being deceived by any subsequent satisfaction entered of record by the mortgagee." In the case of *Swartz v. Leist,* 13 Ohio St., 419, a mortgagee, after having sold one of a series of notes, released the mortgage of record. The land was then sold to another party, and a person who held one of the notes by assignment sought to foreclose against the purchaser. The court in that case said: "But the question in this case is, whether the rights of Swartz were such that they can be asserted against a bona-fide purchaser from the mortgagor, who, without notice of the lien claimed by Swartz, has parted with his money, relying upon a statutory discharge of the mortgage which he found executed by the mortgagee, and properly entered upon the record. The rights of Swartz were, as we have said, purely equitable. No title to, or estate in, the mortgaged premises, had been conveyed to him. A legal title to lands can not, either at common law, or under our statute, pass by the sale and delivery of a promissory note. The legal title to the conditional estate, granted by the mortgage, remained in the mortgagee as fully after the transfer of the note as before. True, he may have held it as trustee, in part, for the benefit of Swartz. But a trust of this kind, not apparent on the face of the mortgage deed, evidenced by no record, and unknown to the world, can not affect the rights of bona-fide purchasers, who, in ignorance of its existence, confide in the acts of the mortgagee falling within the apparent scope of his powers as

the legal owner of the mortgage. As against such parties, the discharge must operate to cancel the record of the mortgage, and thereby extinguish its lien." *Swartz v. Leist,* and *Ogle v. Turpin, supra,* were quoted with approval by this court in *Whipple v. Fowler,* 41 Nebr., 675. In the case at bar, the rights of the parties, as between the holder of the mortgage and appellant, must be determined by reference to the registry acts of this state, and not upon the fact that the instruments obtained by the bank were negotiable promissory notes. In the case of *Rumery v. Loy,* 61 Nebr., 755, this court, by SULLIVAN, present chief justice, said: "The rights of rival claimants in cases of this kind are not to be determined by the laws of negotiable instruments, as counsel seem to think, but by the registry act, which was designed to protect those who are interested in knowing the state and condition of land titles." Another valid reason exists why appellant is not entitled to priority over the mortgagee, Mrs. Wiltse. In *Swartz v. Leist, supra,* it is said: "But the parties here are not equally faultless, and do not stand *in equali jure.* Swartz negligently or confidingly permitted Little, the mortgagee, to retain the legal title conveyed by the mortgage and the power of control over it. Little had thus the legal power and ostensibly a perfect right to discharge and release it. Leist, the purchaser, having no reason to suspect fraud, was justified in regarding the release legally made by one who was ostensibly a proper party as an effectual discharge of the lien. And as between these parties, he who unwisely reposed confidence in Little and gave him the power to defraud should suffer the consequences." So in the case at bar, appellant by failing to take and place of record an assignment from Edgar, the vendor, of his lien *pro tanto,* put it into the power of Edgar to induce Mrs. Wiltse to loan him the money, which he did. It follows, therefore, that the judgment of the trial court in giving Mrs. Wiltse a lien superior to that of appellant was right, and should be affirmed.

The trial court gave Ellis F. Prine a fourth lien upon

the premises. This portion of the decree is erroneous. All that has been said upon the question of priorities as between Mrs. Wiltse and appellant bank applies with equal force to the lien of Prine, and there is no doubt that the lien of Mrs. Wiltse is prior and superior to that of both Prine and the bank. Prine, however, took an assignment of the purchase-money note from Edgar prior to the transcripting of the judgment obtained by Palmer against Edgar. The bank took its assignment of the purchase money notes from Edgar after Palmer's judgment had been duly transcripted to the district court. As Palmer does not stand in the relation of a bona-fide purchaser, or of a mortgagee without notice, and as his interest attaches simply to the interest that the vendor Edgar still retained in the purchase price due on the land, the lien of Prine, in the absence of intervening equities, would be superior to that of Palmer, the judgment creditor, while the lien of the appellant bank would be junior to such judgment lien. But it is a logical impossibility to give Prine a lien superior to that of Palmer, and inferior to that of Mrs. Wiltse, while giving the latter a lien junior to that of Palmer. The question would not be free from difficulty if Mrs. Wiltse and Prine were *in equali jure*. But this is not the case. Mrs. Wiltse is just as clearly entitled to priority over Prine, as Palmer is entitled to priority over Mrs. Wiltse; and the injustice of inverting the order of priority as between Prine and Mrs. Wiltse in order to give to Prine's lien a priority over that of Palmer, is manifest when it is remembered that Prine had it in his power to prevent such injustice, by procuring, as he should have done, an assignment *pro tanto* of the security held by his assignor, Edgar, for the purchase money note, and recording the same, so that Mrs. Wiltse might have acted with reference to his interest. Having failed to do this, Mrs. Wiltse is entitled to have satisfaction of her lien out of the available funds, undiminished by the prior payment of a secret equity, held by Prine, regarding which the records, upon which she had a right

to rely, were silent. ' But it does not follow that this laches on the part of Prine, by which he lost his priority over the lien of Palmer's judgment, should subject his lien to that of appellant bank. The latter and Prine are both purchasers in part of a series of notes secured by the same instrument; as to Mrs. Wiltse, they are both in *pari delicto;* and it follows that their liens should prorate; and the decree of the trial court, in so far as it subjects the lien of Prine to that of the bank, is erroneous. By the decree of the trial court, no notice was taken of the rights of Nutter, the vendee. It is disclosed by the record that immediately upon making the purchase, Nutter placed of record his bond for a deed, and went into possession of the premises, and has remained in possession ever since. All parties to the record are chargeable with notice of his possession, the nature of his title, and the remainder of the purchase price due from him to his grantor. He has made a number of payments on the purchase price for the premises, but the amount remaining due from him we will not attempt to determine at this time. The decree of the trial court should have determined the amount due from Nutter under his contract of purchase, with interest thereon, together with the taxes he should have paid; and he should, within a short time, to be fixed by the court, be permitted to pay into court such amount, to be distributed in satisfaction of the liens of the various parties to the case as hereinbefore determined.

It is therefore recommended that the judgment be reversed, with directions to the trial court to give to Jerome Wiltse a first lien for the amount due him on his tax-sale certificate; to Leroy Palmer a second lien for the amount of his judgment; to Mary L. Wiltse a third lien for the amount due her upon her mortgage; and after these various liens are satisfied, the liens of Ellis F. Prine and appellant bank should prorate; and to determine the amount due from William T. Nutter, and require the same

to be paid into court within a short time, to be fixed; the money to be applied as hereinbefore directed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed, with directions to the trial court to give to Jerome Wiltse a first lien for the amount due him on his tax-sale certificate; to Leroy Palmer a second lien for the amount of his judgment; to Mary L. Wiltse a third lien for the amount due her upon her mortgage; and after these various liens are satisfied, the liens of Ellis F. Prine and appellant bank should prorate; and to determine the amount due from William T. Nutter, and to require the same to be paid into court within a short time, to be fixed; the money to be applied as hereinbefore directed.

JUDGMENT ACCORDINGLY.