JOHN J. BUFORD, ADMINISTRATOR OF THE ESTATE OF ERNEST R. DAHLKE, DECEASED, APPELLANT, V. LAURA H. DAHLKE ET AL., APPELLEES.

62 N. W. 2d 252

Filed January 22, 1954. No. 33414.

*Robert H. Petersen* and *Charles E. O'Brien,* for appellant.

*Oscar T. Doerr,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This appeal developed because of a general demurrer by appellees to the petition of appellant, the action of

the court sustaining the demurrer, the refusal of the appellant to plead further in the case, and a judgment of dismissal.

The appellant alleged in his petition that: He was the appointed and qualified administrator of the estate of Ernest R. Dahlke. Prior to September 1, 1949, Ernest R. Dahlke and Laura H. Dahlke, his wife, were the owners in joint tenancy of a described tract of real estate in Douglas County, Nebraska, and on that date they contracted in writing to sell it to George N. Chadwell and J. Louise Chadwell for $4,750, payable to Ernest R. Dahlke and Laura H. Dahlke at the times fixed by the contract. A copy of the contract was attached and made a part of the pleading. The vendees had paid to Laura H. Dahlke, since the death of her husband on January 13, 1951, $192 because of the contract. The unsatisfied part of the purchase price was $2,929.50. One-half of the money paid or to be paid because of the contract after the death of Ernest R. Dahlke was an asset of his estate. The wife of the deceased had refused to account to appellant for one-half of the amount paid to her by the vendees on the contract after the death of the deceased, and the vendees have refused to account to appellant for one-half of the amount due by the terms of the contract. The vendees maintain that they should, and they have declared that they will, pay all further amounts required by the contract to Laura H. Dahlke, the surviving wife of the deceased, and will not pay to appellant one-half thereof as he has requested and demanded. The appellant asked for a judgment against appellees for one-half of the amount paid by the vendees to Laura H. Dahlke since the death of her husband, for a declaratory judgment that one-half of all amounts to be paid by virtue of the contract constitute an asset of the estate of the deceased and should be paid to appellant, and for other equitable relief.

The vendors are named in the contract as "Ernest R. Dahlke and Laura H. Dahlke, husband and wife, par-

ties of the first part" and the purchase price is required to be paid to them. They are not referred to therein in any other capacity or status. The vendees are described in the contract as "George N. Chadwell and J. Louise Chadwell, as joint tenants with right of survivorship, parties of the second part" and they were given possession of the premises from the date the contract became effective.

The appeal presents for decision the sufficiency of the facts well pleaded by the petition to state a cause of action in favor of the appellant. Panebianco v. City of Omaha, 151 Neb. 463, 37 N. W. 2d 731; Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874.

The real estate described in the petition and in the contract of sale and purchase referred to therein was owned in joint tenancy by Ernest R. Dahlke and Laura H. Dahlke. They, on September 1, 1949, obligated themselves in writing to sell and convey it for a stated consideration to George N. Chadwell and J. Louise Chadwell, as joint tenants with right of survivorship, and they agreed to buy it and pay the purchase price partly in cash and the balance in installments. The contract was properly executed and delivered. Its validity and enforceability has not been questioned and obviously could not be because appellant pleads it as the basis of the relief he seeks and appellees admit all facts concerning the contract asserted by the pleading of appellant. The specific problem is who was entitled to the unpaid part of the purchase price of the property at the time of the death of Ernest R. Dahlke on January 13, 1951. The appellant claims one-half of it as an asset of the estate of the deceased. The appellee, Laura H. Dahlke, says she is the owner of all of it by right of survivorship.

It is important to consider who was the owner of the real estate at the time of the death of Ernest R. Dahlke. That is clearly outside the range of argument. It has been frequently and consistently decided by this court, as it is quite unanimously agreed by courts generally,

that if the owner of real estate enters into a contract of sale whereby the purchaser agrees to buy and the owner agrees to sell it and the vendor retains the legal title until the purchase money or some part of it is paid, the ownership of the real estate as such passes to and vests in the purchaser, and that from the date of the contract the vendor holds the legal title as security for a debt as trustee for the purchaser. The interest or estate acquired by the vendee is land and the rights conferred by the contract upon and vested in the vendor are personal property. In case of the death of the vendee intestate his interest or estate in the land would descend to his heirs and in the case of the death of the vendor intestate the rights acquired by him because of the contract would pass as personal property to his administrator. In Hendrix v. Barker, 49 Neb. 369, 68 N. W. 531, this court said: "In an executory contract for the sale of real estate equity treats the vendor as the trustee of the purchaser and the purchaser as the trustee of the purchase money for the vendor. This rule rests upon the doctrine that equity considers that done which ought to be done." The statement of the rule in Jewett v. Black, 60 Neb. 173, 82 N. W. 375, is: "An executory contract for the sale of land vests the equitable ownership of the property in the purchaser, and in such case the seller retains the legal title as security for the deferred installments of the purchase price." It is said in Grandjean v. Beyl, 78 Neb. 349, 110 N. W. 1108: "A vendee in possession of land under a contract of purchase, on which part of the purchase price has been paid, holds equitable title to the land, which on his death descends to his heirs." In re Estate of Wiley, 150 Neb. 898, 36 N. W. 2d 483, contains this language: "An executory contract for the sale and purchase of land, enforceable for and against vendor and vendee, is a present equitable conversion of land into personalty and of personalty into land. * * * Where an owner of realty entered into a binding contract for the sale thereof prior

to his death equity will treat the realty as personalty in distributing his estate." See, also, Dorsey v. Hall, 7 Neb. 460; Gardels v. Kloke, 36 Neb. 493, 54 N. W. 834; First Nat. Bank of Falls City v. Edgar, 65 Neb. 340, 91 N. W. 404; United States v. Sode, 93 F. Supp. 398; 19 Am. Jur., Equitable Conversion, § 15, p. 15. This court has not deviated from this doctrine and has applied and enforced it when the contract of purchase and sale was "enforceable for and against vendor and vendee." Grandjean v. Beyl, *supra;* In re Estate of Wiley, *supra.*

A matter of prime importance was the effect of the contract of sale and purchase upon the status of the vendors as joint tenants. An indispensable requisite of a common law joint tenancy was the four unities of time, title, interest, and possession. The tenants thereof were required to have one and the same interest resulting from the same conveyance, commencing at the same time, and accompanied by undivided possession. These were required to be continued during the jointure. Any act which destroyed one or more of the unities caused a severance and destruction of the joint tenancy. In Stuehm v. Mikulski, 139 Neb. 374, 297 N. W. 595, 137 A. L. R. 327, it was said: "The creation as well as the continued existence of an estate in joint tenancy under the common law, which is allowed to exist in this jurisdiction, requires a unity of possession, a unity of interest, a unity of time and a unity of title in all holding an interest in such estate." See, also, Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271.

Any act of a joint tenant which destroys one or more of its necessarily coexistent unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. Stuehm v. Mikulski, *supra;* Van Antwerp v. Horan, 390 Ill. 449, 61 N. E. 2d 358, 161 A. L. R. 1133. A conveyance by one joint tenant of his interest destroys the unities of title, interest, and possession and causes a severance of the joint tenancy. A contract by one joint tenant to convey his interest to a stranger severs

a joint tenancy since equity regards that as done what in good conscience ought to be done.   In Naiburg v. Hendriksen, 370 Ill. 502, 19 N. E. 2d 348, it is said:   "We have been unable to find any cases from this jurisdiction on the question of whether a contract to convey operates as a severance of a joint tenancy.   However, the courts of other jurisdictions, and leading text writers, are unanimously of the opinion that a contract to convey operates, in equity, as a severance of the joint tenancy.   (In re Hewett, 1 Ch. Div. 362 (1894); Gould v. Kemp, 2 Myl. & K. 304, 309, 39 Eng. Rep. 959, 961 (1833); In re Wilford's Estate, 11 Ch. Div. 267 (1879); Burnaby v. Equitable Reversionary Interest Society, 28 Ch. Div. 416 (1885); Brown v. Raindle, 3 Ves. Jun. 256, 257, 30 Eng. Rep. 998, 999 (1796); Kurowski v. Retail Hardware Mutual Fire Ins. Co. of Minnesota, 203 Wis. 644.)   Tiffany, in his Law of Real Property, volume 1, paragraph 191, at page 638, says:   'It has been decided that in equity a mere contract by one joint tenant to sell his share or to settle it will effect a severance.'   The rule announced by these authorities is based on the equitable maxim 'Equity regards as done what in good conscience ought to be done.' "   In a later case decided by the Illinois court, Klouda v. Pechousek, 414 Ill. 75, 110 N. E. 2d 258, it is said:   "* * * a contract to convey made by a joint tenant will operate, in equity, to sever the joint tenancy * * *." See, also, Kozacik v. Kozacik, 157 Fla. 597, 26 So. 2d 659; Annotation, 129 A. L. R. 816; 48 C. J. S., Joint Tenancy, § 4, p. 927.   A conveyance of joint property by all the joint tenants destroys the joint tenancy.   Ball v. Mann, 88 Cal. App. 2d 695, 199 P. 2d 706.

It logically follows from what has been said that if all the joint tenants enter into a joint contract to sell the joint property, receive and accept a part of the purchase price, and put the purchaser in possession of the property this destroys the joint tenancy in the realty, even though the vendors retain the legal title to the realty as security for the balance of the purchase price.

In re Sprague's Estate, — Iowa —, 57 N. W. 2d 212, considered these facts: James Sprague and Nancy M. Sprague, husband and wife, owned real estate as joint tenants. Mrs. Sprague made a will and codicil by which she gave it to named stepdaughters if she survived her husband, became vested with full title thereto as surviving joint tenant, and was possessed of it at the time of her death. A sister of the testatrix was the residuary beneficiary named in the will. Thereafter Mr. and Mrs. Sprague made a valid contract for the sale and conveyance of the real estate to vendees named therein. The purchase price, a large part of which was unpaid at the time of the death of Mr. Sprague, was required to be paid in installments. Later and about 5 years after the date of the contract Mrs. Sprague died. It is said in the headnotes to that case: "Contract to sell realty owned by husband and wife as joint tenants with right of survivorship destroyed the joint tenancy in the realty and effected an equitable conversion of the realty into personalty consisting of contract for sale, in which husband and wife each owned an undivided one-half interest, though they retained legal title to the realty as security for payment of purchase price." It is said in the opinion that the comments of the trial court, relative to the real estate involved, aptly set forth the views of the Supreme Court relative to this feature of the case. These contain the following: " '* * * The making of this contract (to sell the real estate) * * * destroyed the joint tenancy of Nancy M. Sprague and James A. Sprague in the Cedar Rapids real estate, and, after the making of this contract, they were each the owner of an undivided one-half interest in such contract. The making of this contract for the sale of this real estate operated so that Mrs. Sprague did not own this real estate at the time of her death in the ordinary sense of ownership; there was a change from outright ownership to security ownership. In other words, while Mr. and Mrs. Sprague retained legal title to the real

estate, they retained title merely as security for the payment of the balance due upon the purchase price, and, they were, in effect, from and after the making of the Kilpatrick contract, merely the owners of personal property: there had been an equitable conversion of such real estate into personal property. * * * Mrs. Sprague never became "vested with full title (of the Cedar Rapids real estate) as surviving joint tenant", nor was she "possessed of it" at the time of her death; she was merely the owner of an undivided interest in the Kilpatrick contract. * * *' "

The ownership of the real estate described in this case as such passed to the purchasers by the contract made by the owners and from that time forth the vendors had only the legal title as security for a debt and this they held as trustees. The interest the vendees acquired was real estate. The right conferred by the contract upon the vendors was personal property. The contract put the vendees in complete possession of the real estate. Their possession was adverse to any right of possession of the vendors. The vendees are in possession as owners and the vendors or their successors can never by their own volition alone terminate that possession or ownership. It is not convincing to contend that the joint tenancy continued when the tenants by their voluntary act deprived themselves of their unities of possession, interest, and title. They had neither title to the real estate, interest in, nor possession of it after the contract of sale was made. The contract of sale destroyed the joint tenancy of the vendors.

The cases primarily relied upon by appellees will be noticed. In re Estate of Jogminas, 246 Ill. App. 518, involved these facts: Frank M. Jogminas and Amelia Jogminas, husband and wife, owned real estate as joint tenants. They entered into contracts to sell and convey it. The purchase price was partly paid and the balance deferred. The husband died. The widow had custody of the contracts and claimed as her property

all amounts unpaid on them by right of survivorship. The administrator of the estate of the deceased husband instituted proceedings in the probate court to recover one-half of the amount unpaid on the contracts at the time of the death of the husband as the property of the estate of the deceased husband. The appellate court in sustaining the conclusion of the probate court stated that the doctrine of equitable conversion was recognized and applied in Illinois but that the theory that it was applicable to the pending case was untenable and asserted, without reference to authority or assignment of any reason, that: "The doctrine of equitable conversion does not apply to joint tenancies. At any rate the probate court of Cook county is not a court of equity but a court of law and therefore legal rather than equitable rules must be applied." A persistent search has failed to disclose that this case has ever been referred to as authority in any decision or text. It should not be overlooked that it was an expression of the appellate court and was not reviewed by the Supreme Court of Illinois. Subsequent decisions of that court do not agree with it. Naiburg v. Hendriksen, *supra;* Klouda v. Pechousek, *supra.* The opinion is not convincing. It is in conflict with the firmly established and consistently applied doctrine of equitable conversion as recognized by the courts of this state. The authority of the district court in this state is not limited as was the jurisdiction of the probate court in Illinois. The district court has general jurisdiction and applies legal and equitable principles as the litigation presented to it requires. Burnham v. Bennison, 121 Neb. 291, 236 N. W. 745; Penn Mutual Life Ins. Co. v. Katz, 139 Neb. 501, 297 N. W. 899.

Simon v. Chartier, 250 Wis. 642, 27 N. W. 2d 752, is quoted in this way by appellees: " 'By the death of Lawrence * * * his interest in joint tenancy passed to his wife * * * the signing of the land contract did not constitute a severance of the joint estate. Kurowski v.

Retail Hardware Mut. Fire Ins. Co., 203 Wis. 644, 647, 648, 234 N. W. 900. The legal title was in the Simons jointly at the husband's ·death and passed by survivorship to his widow.'" The sole support of the conclusion stated therein was the cited prior decision of the Wisconsin court. That case considered a situation in which the title to a lot was owned in joint tenancy by a husband and wife. The husband orally agreed to form a partnership with his son; that the partnership should erect a building on the lot; and that the partnership should own the premises. That case was decided on the basis that the husband as one of the joint tenants did not convey or agree to convey his interest in the lot but that he agreed that the entire lot should belong to the partnership. This it was said did not cause a severance of the joint tenancy. The language of the court in this regard follows: "It is true that, generally speaking, a transfer by a joint tenant of his interest constitutes a severance. It is also true that a contract by a joint tenant to transfer his interest may effect a severance in equity although it does not at law. * * * But in the latter case the interest contracted to be transferred must be that of the joint tenant contracting, not that of his cotenant or the property in entirety. Here the agreement of the father was not to transfer his interest to the partnership but the entire property."

Detroit & Security Trust Co. v. Kramer, 247 Mich. 468, 226 N. W. 234, considered transactions involving lands owned by a husband and wife as tenants by the entireties. It did not relate to or consider any matter affecting or resulting from a joint tenancy. The two estates are not identical but in most respects dissimilar. What is said therein on the subject of equitable conversion which is characterized as "at best is somewhat far fetched" and "Carried to its logical conclusion * * * leads to many strange and serious results" may not be accepted because of the more tolerant view of the decisions of this court toward that doctrine. The specula-

tion indulged by the writer of the opinion as to what the parties intended is wholly unimportant in this case because the contract here involved is clear, unambiguous, and complete. The facts pleaded as a cause of action are admitted by the demurrer. It must be concluded that what the joint tenants did is what they intended to do. The result of their acts is a legal conclusion to be determined by the court. The Michigan case is neither applicable nor helpful.

The contract of sale of the real estate provides that the purchase price shall be paid to the parties of the first part who are named as Ernest R. Dahlke and Laura H. Dahlke, husband and wife. The contract attributes to them no other relationship or status. Joint tenancies may only be created by contract. If an instrument transfers a right to or creates an interest in two or more persons and it is silent, indefinite, or ambiguous as to the nature of the estate transferred or created it will be considered as a tenancy in common and not a joint tenancy. There is no expression in the contract important to this controversy indicating any intention of the vendors to have, receive, or hold the benefits accruing to them because of the contract as joint tenants. In Sanderson v. Everson, 93 Neb. 606, 141 N. W. 1025, it is said: "Joint tenancies are created by contract, and, if not so created, they do not exist. True, they are not favored, and, if not expressly created by contract, the law presumes the tenancy is in common, and that upon the death of one of the holders of the title his or her interest descends to his or her heirs. * * * It is true that, in order to create a joint tenancy, the purpose must be clearly expressed, otherwise the tenancy will be held to be in common." See, also, Olander v. City of Omaha, 142 Neb. 340, 6 N. W. 2d 62; In re Estate of Vance, 149 Neb. 220, 30 N. W. 2d 677; Bodeman v. Cary, 152 Neb. 506, 41 N. W. 2d 797. This doctrine applies to joint tenancies without regard to the character of the property, that is, whether it is real estate or personal property. In re Estate of Vance, *supra*.

Accepting as true the facts pleaded, as must be done because of the general demurrer to the petition, the contract of sale of the real estate and all the benefits accruing because of it to the parties of the first part named therein were owned by Ernest R. Dahlke and Laura H. Dahlke as tenants in common at the time of the death of Ernest R. Dahlke, and one-half of the then unpaid purchase price of the real estate as provided by the contract was an asset of the estate of the deceased and should be paid to the appellant. The petition states a cause of action. The demurrer was improperly sustained.

The order sustaining the demurrer and the judgment of dismissal entered in this case by the district court should be and they are each reversed, and this cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.