(No. 34598.—▮▮▮▮▮▮▮▮▮▮▮

ILLINOIS PUBLIC AID COMMISSION, Appellant, *vs.* JEWELL STILLE *et al.,* Appellees.

*Opinion filed September 18, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (M. BROOKS BYUS, and MADALYN MAXWELL, of counsel,) for appellant.

SCHMIEDESKAMP and DEEGE, of Quincy for appellee Jewell Stille; WM. OWEN MAYS, of Quincy, for appellee the estate of Christian Stille.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The Illinois Public Aid Commission appeals directly to this court under the provisions of section 75(1) of the Civil

Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 75) from an order of the circuit court of Adams County affirming the county court of that county in its dismissal of a citation to discover assets.

The sole question presented by this appeal is whether a joint tenancy in personal property with right of survivorship has been created where the proceeds of a sale of real estate held in joint tenancy have immediately and directly been deposited in a safety-deposit box theretofore rented by all of the vendors of the realty under a "joint tenancy" rental agreement.

For many years Jewell Stille, herein referred to as respondent, and Christian Stille, her late husband, had established a practice of trading one property for another, taking title as joint tenants with right of survivorship in each instance. Each of these properties had been acquired through the efforts and earnings of both parties. The last of the properties thus held by them was an improved lot in the city of Quincy.

In July of 1951 this property was sold, and the sale proceeds immediately placed in a safety-deposit box previously leased by respondent and her husband. The contract for rental of the box provided in part "that all property of every kind at anytime heretofore or hereafter placed in the box is the joint property of both lessees and upon the death of either passes to the survivor." About six months thereafter, Christian Stille died. Mr. Stille had been a recipient of old age assistance, and the Illinois Public Aid Commission filed a claim against his estate for the amount of assistance furnished. The assets inventoried in the estate were insufficient to satisfy the claim.

The commission filed a petition for citation to discover assets. The theory of the petition was that the contents of the safety-deposit box were, to the extent of one half of the currency found therein, a part of Stille's estate.

Jewell Stille was successful in resisting the petition in the county court, and a similar result was reached on appeal to the circuit court. This appeal followed.

It is the theory of the commission that upon the death of Stille, the respondent did not acquire sole title to the money within the safety-deposit box for the reason that, the commission submits, there has been no compliance with the relevant statute. Ill. Rev. Stat. 1957, chap. 76, par. 2.

The statute provides in essence, and subject to exceptions not here material, for abolition of the right of survivorship as between joint tenants, unless the joint tenancy shall have been created by an instrument in writing expressing an intent to create a joint tenancy in personal property with the right of survivorship.

The phraseology of the lease involved in this case leaves no doubt that the language relied upon by respondent was intended merely to protect the lessor against possible actions based upon a claim arising out of an unauthorized withdrawal of the contents of the box by one of the lessees. This court has previously held that such a lease does not satisfy the statutory requirement for the creation of the right of survivorship. The lease does not of itself serve to establish rights as among the lessees of the safety-deposit box; its sole office is the definition of the rights of the lessees as a group, as against the lessor of the box. Accordingly, such a lease is not an "instrument in writing expressing an intention to create a joint tenancy" as required by the statute. *In re Estate of Wilson,* 404 Ill. 207, 212.

It is contended by the respondent that the doctrine of the *Wilson case* does not apply to these facts. There is an attempt to distinguish the *Wilson case* by pointing out that in *Wilson,* the fund was an accumulation of deposits of undefined amounts from time to time, and all such funds had been earned by the deceased cotenant. The distinction is not compelling. In the instant case, as in *Wilson,* the

record discloses no *transfer* of funds by written instrument expressing an intention to create the right of survivorship; and such transfer is indispensible.

Respondent ably discusses the underlying principles of joint tenancy. However, as we pointed out in the *Wilson case,* these principles are not necessarily involved in a proceeding such as this one. The question presented for review is not whether a joint tenancy has been created between the appellee and her husband. Assuming, but not deciding, that a joint tenancy exists, the issue here presented is whether the incident of survivorship is one of the features of that joint tenancy. The statute above cited addresses itself solely to the incident of survivorship, and has no application in determining the nature of the estate created except in respect to survivorship.

At first blush, it may appear that to term an estate a joint tenancy, where the feature of survivorship is not present, is a play upon words. But the name applied to an estate is of less importance than the legal significance of the estate. Generically, the term "joint tenancy" has assumed two distinct meanings. The first of these is a joint-tenancy estate under orthodox property law, wherein the term is almost never used if the estate does not include the feature of survivorship. The second, and quite distinct use of the term "joint tenancy" is its application to bank deposits and the contents of safety-deposit boxes. 42 Iowa Law Review, 551, 562.

It is the practice in most jurisdictions to apply rules analogous to those of orthodox property law to the estates created in bank and safety-vault deposits. The usual course is to class the problem as one involving certain of the recognized legal transactions, and then to apply a solution based upon the application of the law relating to such transactions. Thus, in various jurisdictions, the estate is defined in terms of testamentary transfers, gifts, trusts, cotenancy, power of attorney, or simple contract. 17 University of Pittsburgh

Law Review 42; 1956 University of Illinois Law Forum 48.

In these law review articles can be found an enlightened discussion of the many problems in various jurisdictions that have arisen in connection with "joint tenancy" and "survivorship" when applied to personalty and respecting the right of co-obligees, third parties, creditors, heirs, etc. Varying statutory provisions produce different results.

In Illinois, the legislature has provided that the incident of survivorship as a feature of joint tenancy is preserved only where the transfer into joint tenancy is accomplished by means of an instrument in writing which conforms to that statute. The statute further distinguishes between deposits in bank accounts, and deposits in safety-deposit boxes. The fact that the estate created in the absence of compliance with the statute may still be termed a "joint tenancy" should not be permitted to obfuscate the problem which confronts the courts in cases such as this one. The name which is applied to the estate is of minimal significance; the legal incidents of such an estate are of paramount importance.

The *Wilson case* has been described as the leading case in this State on the creation of a joint tenancy in personal property. (*David* v. *Ridgely-Farmers Safe Deposit Co.* 342 Ill. App. 96, 107.) It must follow from what we have here said, that we regard the *Wilson case* as expressive of the Illinois law on the creation of the right of survivorship, rather than an estate merely designated a "joint tenancy" in personal property. As thus explained, we adhere to the doctrine of the *Wilson case* and find its principles controlling here.

Accordingly, we conclude that the funds deposited by Mr. and Mrs. Stille in their safety-deposit box had not been transferred to them by means of an instrument in writing expressing an intention to create an estate in those funds with the right of survivorship.

It is also the contention of respondent that the $6,500 derived from the sale of real estate, admittedly held in joint

tenancy, continued to be property with the same characteristics; that the incidents of the land attached to the proceeds of such sale and that the $6,500 should be treated as land and not as personal property.

In some jurisdictions it is held that where joint tenants enter into a contract to sell joint-tenancy real estate, the joint tenancy is at once severed and the vendors become entitled to the proceeds of sale merely as tenants in common with no right of survivorship. This is the view of the Supreme Court of Nebraska. (*Buford* v. *Dahlke,* 158 Neb. 39, 62 N.W.2d 252; 38 Minn. L. Rev. 466.) The Supreme Court of Iowa in a five-four decision recently reached a like conclusion in the case of *In re Baker's Estate,* 247 Iowa 1380, 78 N.W.2d 863. In a vigorous dissent, however, four Justices support the view that a sale of joint-tenancy real estate by all the joint tenants should not work a severance and that where one of the joint-tenant vendors dies before the purchase price is paid in full, the surviving joint-tenant vendor is entitled to the balance of the purchase price.

As is pointed out in the majority opinion in the Iowa case there are other jurisdictions that have adopted the view that the quality of survivorship is transferred to the proceeds of sale of joint-tenancy real estate, and where one of the joint-tenant vendors dies before the purchase price is paid in full, the surviving joint-tenant vendor will become entitled to the balance of the proceeds of sale. (*Simon* v. *Chartier,* 250 Wis. 642, 27 N.W.2d 752, 754; *Childs* v. *Childs,* 293 Mass. 67, 199 N.E. 383, 386.) The Supreme Court of Florida in a *per curiam* opinion reached such a conclusion, although here there was a vigorous dissent by three Justices. *Kent* v. *O'Neil,* (Fla., 1951,) 53 So.2d 779.

In both the majority and dissent in the Iowa case of *In re Baker's Estate* it is pointed out that Illinois favors the rule that the surviving joint tenant takes the entire unpaid purchase price by survivorship. In *Watson* v. *Watson,* 5 Ill.2d 526, this court said at page 533: "The facts

here indicate that joint tenants entered into a contract to sell property conditioned upon certain payments to be made by the buyer. The doctrine of equitable conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract. In one other instance the administrator claims the right to a portion of the proceeds received under the sale of certain farm property. It appears that plaintiff and Watson, again holding title as joint tenants, entered into an agreement to sell this farm in a transaction not essentially unlike the preceding contract for deed, and our observations relating to that transaction are applicable here."

Can the principle of the *Watson case* be carried so far as to impress the $6,500 with the attributes of a joint tenancy? That case dealt only with a factual situation where one of the joint-tenant vendors died while the sale of the joint-tenancy property remained executory. It did not go so far as to hold on the facts that, where the purchase price for joint-tenancy property has been paid in full, the purchase price thereafter retains the same attributes formerly possessed by joint-tenancy real estate itself.

It can be argued, of course, that the principle of the *Watson case* goes far enough to impress the survivorship qualities of a joint tenancy on the proceeds of a sale of the joint tenancy real estate even after that sale has been fully executed. If a portion of the purchase price is subject to the joint-tenancy concept of survivorship, why, it may be asked, should not the same survivorship principle apply to all the proceeds? It is argued that the conclusion reached in the *Watson case,* that the survivor was entitled to the entire proceeds necessarily rests on the theory that the proceeds stand in place of and assume the same qualities of survivorship as the real estate from which the proceeds were derived. It may be pointed out that a line of California cases supports the view that the "proceeds of joint

tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired." *Fish* v. *Security-First Nat. Bank of Los Angeles,* 31 Cal.2d 378, 189 P.2d 10, and cases collected at page 15, point 7.

Not without logic is the contention that a rule which gives the proceeds of sale of joint-tenancy real estate the same character as the joint-tenancy real estate itself will tend in many cases to better carry out the real intention of the parties. Thus the dissent in the Iowa case quotes with approval from a note in 41 Cornell Law Quarterly 154, as follows: "When a married couple buys land as joint tenants or as tenants by the entirety they intend it to pass by survivorship. But the possibility that if they contract to sell their land their right to the purchase price will not go to the survivor, unless they expressly provide that it shall, can scarcely be as well understood since it is definitely not a settled rule of law. There is little basis for the contention that when a husband and wife contract to sell land jointly owned by them, they actually intend that the survivorship which was incident to their interests in the land should not be incident to their interests in the money due them under the contract. Their act in contracting to sell land held under a survivorship form of cotenancy can more reasonably be interpreted as an attempt to substitute rights in money for their rights in land, the form of co-ownership continuing as before. The parties intended survivorship when the joint tenancy was created. Until an intent to terminate that right is manifested, the court should endeavor to protect it." It can also be urged that this general idea seems to find recognition in the recent Illinois statute which transfers the right of survivorship to the award for joint-tenancy property taken by eminent domain proceedings. Ill. Rev. Stat. 1957, chap. 76, par. 2(d).

While these arguments seem persuasive, it would appear that any general principle which impressed the pro-

ceeds of every sale of joint-tenancy real estate with the attributes of a joint tenancy, even after the sale was fully completed, goes further in upholding the joint-tenancy form of ownership than our Illinois statute contemplates. (*Doubler* v. *Doubler,* 412 Ill. 597, 600.) Furthermore, such a doctrine would, it seems, provoke many troublesome questions in the future. If a joint tenancy in the proceeds of a completed sale of real estate arises merely because the real estate itself had been held in joint tenancy, would not the same principle require a holding that a joint tenancy was created in any property in which the parties might later invest the proceeds? Reinvestment after reinvestment might be involved. Complex problems of tracing could arise. And when would a joint tenancy, once created, end? True, the California rule stated above, giving the character of a joint tenancy to proceeds of sales of joint-tenancy real estate is qualified by the words "in the absence of a contrary agreement." It might be said, therefore, that the joint-tenancy character of the proceeds of sale would cease under this doctrine whenever the parties so agreed expressly or where their course of dealing evidenced an implied intent or agreement that the proceeds should no longer be subject to the right of survivorship. The latter would happen, it could be explained, where the proceeds were not preserved intact or where they were intermingled in whole or in part with other funds. So qualified, the rule might be more workable, yet it is difficult to escape the conviction that such a doctrine would provide fertile grounds for controversy over the proceeds of sales of many parcels of joint-tenancy real estate. It would no doubt provoke future problems which cannot now be anticipated.

A somewhat similar situation arises out of a mortgage by one of the joint tenants. It has been generally recognized that a mortgage by one of the joint tenants will sever the joint tenancy. (*Lawler* v. *Byrne,* 252 Ill. 194, 196.) Where both joint tenants join in the mortgage, however,

it has been assumed that there is no severance and that when the mortgage is released, the joint tenancy continues unimpaired.

There is undoubtedly much to be said in favor of the Nebraska view that where all the joint tenants enter into a contract to sell the real estate, the joint tenancy is severed and the attribute of survivorship does not attach to the proceeds of sale payable by the purchaser. For one thing, it can be argued that there is no express agreement upon which to base such a survivorship with respect to the proceeds of sale. On the other hand, however, there are considerations in favor of the view we expressed in the *Watson* case.

Before the *Watson* decision, there was considerable doubt about what should be done in the rather common situation where joint tenants, as vendors, entered into an installment contract to sell real estate and one of the vendors died before the purchase price had been paid in full. In the case of *In re Estate of Jogminas,* 246 Ill. App. 518, it was indicated that the balance could be safely paid to the surviving vendor, but the language of the decision was not very satisfactory and many lawyers hesitated to rely on it. Frequently suits were brought to determine whether the balance should be paid to the surviving joint tenant or half to the surviving joint tenant and half to the decedent's personal representative. The *Watson case* resolved this question.

To hold that a contract to sell by *all* joint tenants severs the joint tenancy would mean, it seems, that not only must the unpaid balance of the purchase price be paid half to the survivor and half to the decedent's personal representative, but that the deed to the purchaser must run not only from the survivor but from the heirs of the decedent as well. The *Watson case,* which denies such a severance, supports the view that a deed from the surviving joint tenant alone is

sufficient. The point is developed in an article in 38 Minnesota Law Review 466, where the effect of *Buford* v. *Dahlke,* 158 Neb. 39, 62 N.W.2d 252 (the Nebraska case which adopts the severance view) is discussed. It is there said in part: "The court held (in the Buford case) that at the time of H's death the contract and all interests under it were held in tenancy in common, and that one-half of the then unpaid purchase price was an asset of the estate. Ownership of the retained legal title was not directly involved, but the irresistible implication is that a conveyance by W after full payment of the purchase price will not suffice; conveyances will also have to be obtained from the administrator, beneficiaries, heirs or creditors of H. The plain holding—relating to the purchase price—will create great practical inconvenience; the clear implication —relating to title—is disastrous. A good many Minnesota titles are based on conveyances executed by a surviving grantor-joint tenant. If the rule of the Buford case is sound, those titles are now highly suspect at best."

Furthermore, it would seem that in future transactions, closing of the deal would be complicated by requiring the purchaser's deed to run not only from the survivor but from the decedent's heirs as well. The existence of minor children and unpaid creditors of the decedent could cause difficulty and added expense.

We are, therefore, of the opinion that the rule of the *Watson case* should not be altered but confined to situations where the sale of the joint-tenancy real estate is not fully executed, and hold that where the sale has been completed and the proceeds paid in full, as here, the joint tenancy comes to an end. If the parties wish to create a right of survivorship in the proceeds of a completed sale, they can easily do so by setting up a joint bank account in the manner provided by the statute, or by "an instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship."

The judgment of the circuit court of Adams County is reversed, and the cause is remanded with instructions that such further proceedings be conducted as may be in conformity with this opinion.

*Reversed and remanded, with directions.*