Estate of Joseph P. Kloss, Deceased.
Agnes H. Schirmann, Executrix, Petitioner-Appellee,
v. Marie Riley, Respondent-Appellant.

Gen. No. 49,647.

First District, Second Division.
January 26, 1965.

Henry T. Synek and John E. McParland, of Chicago, for appellant.

Irving Goodman and Edward T. Howe, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

The executrix of the estate of Joseph P. Kloss, deceased, filed an amended petition for the determination of the title to $6,400 in cash found in a safe deposit box leased by decedent and the respondent, Marie Riley, as joint tenants. The trial court found that the funds belonged solely to the decedent and ordered that they be delivered to the executrix of his estate, from which order respondent appeals.

The respondent and the decedent were brother-in-law and sister-in-law, the decedent having been married to respondent's sister, Elizabeth, who died on May 22 or 24, 1954. Petitioner-executrix is decedent's sister and the sole beneficiary under decedent's will which was executed in 1956. On May 29, 1954, the decedent and the respondent executed a joint lease agreement for a safe deposit box with the Diversey Safe Deposit Company in Chicago, Illinois. The agreement, which was signed by both parties, reads in part:

> "Received from Diversey Safe Deposit Co. a receipt for rental paid for Safe Deposit No. *477* which is leased by the undersigned subject to all the rules and regulations of said Diversey Safe Deposit Co. as endorsed on said receipt and to all of which rules and regulations the undersigned hereby expressly agrees. As joint tenants the survivor or survivors to have access thereto in case of death of either. Either has the power to appoint a deputy, either has the right to surrender the safe. *We* also acknowledge to have received *2* keys of said Safe Deposit Box. Rules & Regulations referred to in the within receipt and subject to which the within mentioned safe is rented.
> . . .

120

"10. In case a safe is rented in the name of more than one person, any one thereof may surrender said safe; any one thereof may have access thereto; any one thereof may appoint a deputy thereto, and any one thereof may remove and dispose of all or any part of the contents of such safe. . . ."

Respondent testified that she and the decedent went to the deposit company alone on May 29, 1954, and that immediately prior to the execution of the leasing agreement, decedent gave her several thousand dollars which he said he wanted her to have. Decedent stated that respondent had done much for him; that whenever she needed the money she could use it; and that whenever he needed it he would use it. Decedent at this time gave respondent a key to the box, which key she retained until sometime in 1962 when she returned it to the decedent before she went into the hospital after her husband's death. Respondent did not know how much money was initially placed into the box, other than to say that it was "several thousand dollars" and "more than $2,000." All of the money found in the box on decedent's death was earned and placed there by decedent.

From May 29, 1954 through April 5, 1958 the safe deposit box was entered sixteen times. Since April 5, 1958, the box was not entered again until the tax officials inventoried it upon decedent's death in 1962. The records of the Deposit Company show that the signature of the decedent alone appears on all sixteen of the entry slips. Respondent, however, stated that she did accompany decedent to the vault on at least ten occasions but that she was not required to sign any of the slips because the signature of only one of the colessors was required. Respondent further testified that she did not remember ever having placed

121

any of her own funds into the box, that she never withdrew any of the funds from the box, that decedent placed additional funds into the box subsequent to the initial deposit in 1954, and that she did not know whether decedent had ever withdrawn any funds from the box.

Respondent further stated that she and the decedent and his wife had a very close relationship, that they saw each other very often, almost daily, from 1931 until 1954 when decedent's wife died, and that although she saw decedent less frequently since his wife's death, she did many helpful things for him until his death in 1962, such as driving him to the bank, cleaning his home and so on.

Elmer Mueller, respondent's brother, testified for the respondent. His testimony was that decedent told him that he opened a deposit box with the respondent so that decedent and respondent could use the money as he or she saw fit. He stated that respondent had possession of one of the two keys to the box until she returned it to decedent in 1962 before she went into the hospital. Mr. Mueller testified that he was present when the key was given to respondent by decedent. He further testified that the husband of the petitioner had offered to handle decedent's financial affairs, but that decedent ordered him out of his home, saying that he did not need his assistance and that he was "money hungry."

Lorraine Canning, petitioner's daughter, testified that she saw both keys in the decedent's possession at Christmas in 1959 and that they were kept by him in a desk drawer in his home. Petitioner's other daughter, Virginia Nepodahl, testified that shortly after the death of the decedent's wife in 1954, she saw both keys in decedent's possession while visiting him, and again saw the two keys in his possession on Christmas in 1959. Mrs. Nepodahl further testi-

fied that she next saw the keys in the possession of her mother, the petitioner, in 1960 after the decedent had given them to her, and that her mother retained possession of the two keys and had them when decedent died. The petitioner testified that in 1954, shortly after the death of decedent's wife, she saw both keys in the possession of the decedent and again saw them in his possession on Christmas in 1959. She further stated that the decedent gave her the two keys in 1960 and that she has since had them in her possession.

Respondent maintains in the alternative that, in view of the fact that she was given the funds by decedent as a gift prior to their placement into the safe deposit box, said funds belong to both herself and the decedent with right of survivorship pursuant to the written leasing agreement between them which was in compliance with Section 2 of the Joint Rights and Obligations Act (Ill Rev Stats 1961, c 76, par 2) relating to joint tenancies in personal property with right of survivorship, or, in the event that the writing in question fails to comply with the requirements of the statute, that she is entitled to one-half of the funds as a tenant-in-common under the case of Illinois Public Aid Commission v. Stille, 14 Ill2d 344, 153 NE2d 59.

█ Neither party raises any question on this appeal concerning the competency of either the respondent or the petitioner to testify as to transactions and conversations with the decedent, in view of Section 2 of the Evidence Act (Ill Rev Stats, 1961, c 51, par 2) or Section 185 of the Probate Act (Ill Rev Stats 1961, c 3, par 185); this matter has been waived.

█ Respondent's first alternative must fail for the reason that the writing in question is no more than a contract establishing rights and duties as between the lessor deposit company, on the one hand,

and the lessee's decedent and respondent, on the other. It in no way purports to be a transfer of title to the contents of the box as between the decedent and the respondent as cotenants, and in no way purports to give either party the right of survivorship in the contents of the box. See In re Estate of Wilson, 404 Ill 207, 88 NE2d 662.

■ Respondent's second alternative presupposes that title had been transferred to her as a co-tenant, by gift from the decedent, which transfer she has failed to prove by such clear and convincing evidence necessary to sustain her claim of gift.

■■ The party who is claiming title to property through gift and who is in no way aided by a presumption that a gift has been made, must prove the transfer of title by means of a gift by clear and convincing evidence. Hill v. Bowen, 8 Ill2d 527, 134 NE 2d 769. Further, where the party claiming the existence of an inter vivos gift does not attempt to exercise his alleged rights until after the death of the alleged donor, such claim is regarded with suspicion by the courts and must be established by clear and satisfactory evidence. Kleinhaus v. Ohde, 350 Ill App 177, 112 NE2d 498. The question of the possession of the keys is of utmost importance in this case, for, if respondent could not establish possession of one of the keys, she in no way can claim that she had access to the box and therefore there would have been no completed gift, if in fact one was intended.

Respondent testified that she received a key to the box at the time that the box was opened, and that at this time only she and decedent were present at the vault company. She further testified that she retained possession of the key until she became ill in 1962 and at that time returned it to decedent before entering the hospital. Elmer Mueller corroborated respondent's testimony to the effect that she had the key until

1962, but directly contradicted her statement that she received the key from decedent at the vault company when only decedent and herself were present, by saying that he, Mueller, was present when decedent gave respondent the key at decedent's home. In a bench trial, the credibility of the witnesses is for the determination of the trial judge. Mr. Mueller's statement that the key was given in his presence raises a serious question as to the possession of the key, and therefore as to whether the alleged gift, if in fact intended by the decedent, was completed.

Secondly, possession of the keys at decedent's death was claimed by the petitioner and as such was corroborated by Mrs. Nepodahl. The keys were in her possession at the time of the trial. Respondent made no attempt to discredit this evidence either on cross-examination of the witnesses, or by offering affirmative proof that the keys were in decedent's possession at the time of his death, which would have corroborated her claim that she had possession of one of the keys and returned it to decedent in 1962.

Finally, respondent did not make any claim to the funds in question until after decedent's death. At no time did she remove any of the funds from the box, at no time did she enter the box alone, and at no time did she place any of her own money into the box. In no way did she assert any of the rights commonly connected with co-ownership of personal property, until after the decedent's death. All of these factors weigh heavily against respondent's claim of a gift.

It cannot be said that respondent proved a transfer of title to her in cotenancy by such clear and convincing evidence as to sustain a gift.

Respondent relies heavily on the case of Illinois Public Aid Commission v. Stille, 14 Ill2d 344, 153 NE 2d 59, in support of this second alternative. In the

125

Stille case, the Public Aid Commission did not question respondent's title as a co-owner of the funds, and in fact brought the action to recover only one-half thereof. The major question there was whether respondent was entitled to all or only one-half of the funds. Here, on the other hand, petitioner challenges the very existence of the title which respondent assumes to exist in her claim to one-half of the funds.

Respondent raises the point that petitioner's evidence as to the possession of the keys is highly improbable, for the reason that the occasion for the declaration by decedent that he had both keys, and the occasion for his showing the keys to the witnesses, were unexplained. Respondent, however, overlooks the fact that she made no objection in that regard at trial, nor did she attempt to elicit the occasion for decedent's actions upon cross-examination of the witnesses in an effort to discredit their testimony.

Respondent's final point is that if the leasing agreement is not of itself sufficient to sustain a transfer of title in cotenancy, it is useful as corroboratory evidence of the alleged prior oral gift. This argument, however, assumes that the possession by respondent of a key to the box was clearly and sufficiently proven, which is not the case. If in fact decedent did intend to make a gift to respondent, proof of intent alone is not sufficient to sustain the claim of a completed gift. The order is affirmed.

Order affirmed.

BRYANT and LYONS, JJ., concur.